**FLEMING v. REINECKE, Internal Revenue Collector.**

**No. 4471.**

Circuit Court of Appeals, Seventh Circuit.

June 27, 1931.

Rehearing Denied Oct. 1, 1931.

Edward R. Lewis, of Chicago, Ill., and John A. Kratz, of Washington, D. C., for appellant.

George E. Q. Johnson, U. S. Atty., and John Potts Barnes, Sp. Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Was the Traffic Club of Chicago, of which appellant was a member, a "social club" within the meaning of the governing section of the Revenue Act (section 801, Revenue Act 1921 [42 Stat. 291]; section 501, Revenue Act 1924 [26 USCA § 872 note]), which reads: "That from and after * * * there shall be levied, assessed, collected, and paid, * * * a tax equivalent to 10 per centum of any amount paid on or after such date * * * (a) as dues or membership fees * * * to any social, athletic, or sporting club or organization. * * *"

Appellant has made this a test case for himself and other members of the club. He challenges the soundness of the holding of the Treasury Department to the effect that the Traffic Club of Chicago was a social club.

Upon the trial, the District Court filed a memorandum wherein it was stated, "I am of the opinion that the Traffic Club of Chicago is a social club or organization within the meaning of the act; that its social features were not subordinate or merely incidental to the active furtherance of a different and predominant purpose, but were a material purpose of the organization."

Appellant contended that the facts are undisputed, and that the sole question is one of law; that the evidence showed the activities and purpose of this club were not predominantly social. Appellee, on the other hand, contended that the issue was one of fact; that the District Court as well as the Commissioner of Internal Revenue found in favor of appellee, and its finding is supported by substantial evidence; and, also, that, irrespective of such finding, the evidence affirmatively established the Traffic Club to be a social club of business men; that the decisions sustain this position.

The Traffic Club was organized in 1907 as a corporation under the laws of Illinois, not for pecuniary profit. Its asserted objects were "to cultivate friendly and social relations and to promote better personal acquaintance among its members; to discuss all topics relating to transportation of all kinds, and to use its influence to obtain the best transportation possible. To build, own or lease or purchase and furnish a Club House or Club Rooms for the use of its members."

450

The charter and the constitution of the club were subsequently modified so as to avoid the Department's holding that it was a social club. Its activities, however, remained unchanged, and it is agreed that its activities, rather than its professions, govern the question before us. The club maintained rooms on the eighteenth floor of the Hotel La Salle. Therein was a main dining room, a lounge, three committee rooms, and a ladies' room. It equipped the dining room. In the lounge, there were lounges and arm chairs, a library table, piano, victrola, radio, bookcases, and books. The club maintained a general library, included in which were Interstate Commerce Reports, as well as newspapers and magazines. There were shower baths provided for members. Regular luncheons were served at noontime from 12 o'clock until 2 o'clock, and dinner was served between the hours of 5:30 and 8 o'clock. Wives of members and other ladies in the families of members were given the privilege of using the clubrooms excepting between the hours of 1 and 5 p. m.

A considerable number of persons attended the luncheons every day. For the four-year period in question, the average number served was about 116. From 12 to 18 persons attended dinner each day during the said four years. Members played cards and checkers. Entertainments were held on different occasions, including dinner dances. Christmas and Thanksgiving luncheons formed part of these entertainments. Golf outings and occasional dinners and talks or lectures were given.

A detailed study of these activities lends support to the court's conclusion that the club was a social, rather than a business, organization. It must be admitted that it is not always easy to distinguish between a social and a business engagement. Business men in large cities not infrequently make business contacts through social engagements. Membership in clubs is often avowedly for the legitimate purpose of increasing business through social engagements. If this Traffic Club can be justifiably described as a business, rather than a social club, it must be upon the hypothesis that its social features were incidents of, as well as promotive of, the business enterprises of its members.

We have a somewhat narrower question, however, than that propounded by the abstract queries, When may an organization of business men be called a social body, and when a business club? We are here construing a revenue statute. Our task is to ascertain what Congress included in its language, "a social, athletic, or sporting club or organization."

It would seem to be more consistent with the purpose of this legislation to say that an organization is a social club if its activities are largely social, even though the actuating motive of the members in joining was to secure business contacts, than to call such an organization a business club because its members are engaged in business, or they joined the club to secure, through its social activities, business contacts.

Numerous cases have been cited: Clubs held to be nonsocial. Chemists' Club v. U. S., 64 Ct. Cl. 156; Aldine Club v. U. S., 65 Ct. Cl. 315; Los Angeles City Club v. Welch (D. C.) 44 F.(2d) 239; Washington Club v. U. S., 38 F.(2d) 130 (Ct. Cl.); Bankers' Club of America v. U. S., 37 F.(2d) 982 (Ct. Cl.); City Club of St. Louis v. U. S., 24 F.(2d) 743 (D. C. Mo.); The Cordon Club v. U. S., 46 F.(2d) 719, decided by the Court of Claims February 9, 1931; Cosmos Club v. U. S., 42 F.(2d) 321 (Ct. Cl.). Clubs held to be social clubs. Faculty Club of University of California v. U. S., 65 Ct. Cl. 754; Abbott v. U. S., 66 Ct. Cl. 603; Fisler v. U. S., 66 Ct. Cl. 220; Women's University Club v. United States, 52 F.(2d) 469, decided by the Court of Claims on June 1, 1931; Women's University Club of Seattle v. Poe, Collector, 52 F.(2d) 447, decided May 28, 1931, by the United States District Court for the Western District of Washington. They need no review. Both parties to the litigation seemed to find comfort in the cases they cite. But each case turns on its own peculiar facts. It seems to us that the instant case is one where the conclusions of the trial judge are supported by the evidence.

The decree is affirmed.