## TOWN CLUB OF ST. LOUIS v. UNITED STATES.

### SAME v. BECKER, Collector of Internal Revenue.

### No. 9179.

District Court, E. D. Missouri, E. D.
July 18, 1932.

Marion C. Early and Myrtle B. Wood, both of St. Louis, Mo., for the Town Club.

Bryan Purteet, Asst. U. S. Atty., of St. Louis, Mo., for Louis J. Becker, Collector.

FARIS, District Judge.

Plaintiff sues in two separate actions at law to recover a total amount of $16,803.98. Of the latter sum $6,281.84 is sought to be recovered for taxes paid to a collector of the United States, who is not now in office, for taxes alleged to have been illegally collected, and which accrued between April 9, 1924, and December 19, 1925, both inclusive.

The sum of $10,522.14 hereby sought to be recovered is for taxes alleged to have been illegally collected from the plaintiff, and which accrued between January 16, 1926, and March 3, 1928.

The above sums were paid by plaintiff to the respective collectors in office at the time of such payments. Demand for refund thereof was made, and refund refused.

The controlling facts in the two cases being precisely similar, the two actions were by consent consolidated for trial and a jury being waived, were submitted to the court on the pleadings and proof.

The taxes whereof refund is here sought, were assessed and collected under the provisions of section 801 of the Revenue Act of 1921 (42 Stat. 291), which reads as follows: "That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

The above-quoted section of the taxing statutes was carried into the Revenue Acts of 1924 and 1926 (section 501), without any material changes (see 26 USCA § 872 and note). So, the law of the case is found in section 801, supra, above quoted.

The sole question presented, in the view I take of the case, is whether plaintiff was, during the times and periods wherein the taxes were exacted, a "social, athletic or sporting club or organization," or whether its functions were civic and/or educational. If the former, it is conceded the taxes collected from it are legal and cannot be recovered; if the latter, these taxes were unlawfully exacted and collected and plaintiff may recover. There is, or should be, but little dispute about the law. It seems to be fairly well settled, in the cases of Fleming v. Reinecke (C. C. A.) 52 F.(2d) 449; Women's University Club v. United States (Ct. Cl.) 50 F.(2d) 469; Women's University Club of Seattle v. Poe (D. C.) 52 F.(2d) 447; Army and Navy Club v. United States (Ct. Cl.) 53 F.(2d) 277.

The above cases dealt with facts which induced the conclusion that the several organizations were entities wherein social features and activities constituted material parts of their activities. Per contra, the cases of Cosmos Club v. United States (Ct. Cl.) 42 F.(2d) 321; City Club of Los Angeles v. Welch (D. C.) 44 F.(2d) 239; Houston Club v. United States (Ct. Cl.) 58 F.(2d) 487; Builders' Club of Chicago v. United States (Ct. Cl.) 58 F.(2d) 503, were cases wherein the facts warranted the conclusion of law reached, that the activities of the respective organizations were predominantly business, commercial, artistic, or educational, and that the social features, though present, were not a material part of such activities.

The oral evidence in the case at bar preponderantly disclosed that the activities of plaintiff were predominantly civic and educational, as contradistinguished from social. But this evidence came, for the most part, from officers of plaintiff who have had occasion to be wholly and closely familiar with plaintiff's activities only since 1928, or later; whereas, the period from April 9, 1924, and up to March 3, 1928, is the period involved in these controversies.

To make out its contentions respecting the activities during the period between April 9, 1924, and March 3, 1928, the defendant offered many, if not all, of the issues of "The

Informant" (plaintiff's official publication), as also many—perhaps all—programs embodying plaintiff's activities between the dates last above mentioned. None of these publications by plaintiff, subsequent to March, 1928, was offered, for the very simple reason that the club's activities for the latter period were not in dispute, nor in issue here. I have, however, carefully examined the programs of the club as issued by it between the years 1924 and 1928. These show that within the period named there were given, or seemingly fostered by the club, that is, given under its auspices, ten dances, five musicales, two picnics, nine swimming parties, five teas, fourteen card parties, two shows, five miscellaneous parties, luncheons, and so forth, and eleven other function which may or not have been either educational or social, or mixed.

During the same period there were a total of ninety-seven functions which, in my opinion, were educational, artistic, or civic.

So, the totals stand, fifty-two clearly social, ninety-seven clearly educational or civic or artistic, and eleven doubtful or mixed.

The club had a lounge, used also as a library; a piano, perhaps three; a swimming pool; and maintains, and maintained, large and well-furnished quarters, including a kitchen and dining rooms, wherein meals are served to members and their guests. These latter things are, of course, not decisive here either way, and not inconsistent with the activities of a nontaxable entity. But they may be considered in connection with the social features above recited.

The club was organized and incorporated under the laws of Missouri relating to "benevolent, religious, scientific, educational and miscellaneous associations." Article 10, chapter 33, R. S. of Mo. 1909 (section 3432 et seq. [now Mo. St. Ann. § 4996 et seq.]).

The articles of association of the club, inter alia, in article 4 thereof say: "Article 4, The object and purpose of the Association shall be for the discussion of questions of commercial, industrial, civic, and social interest; for the encouragement of good reading and the cultivation of art and literature and rational social amusement; to aid and assist the industrial, commercial, civic and social development of the City of Saint Louis, and more especially as they pertain to women; to provide, establish, and maintain a clubhouse or club rooms with library and other facilities appropriate and convenient for the entertainment of its members and their guests; and for the conduct of lawful and rational out-of-door play games and exercises; provided, however, that the Association as such shall have no connection with partisan politics or partisan organizations, nor shall it ever be committed to the endorsement of any particular measure or measures."

The Constitution of the club, in article 2 thereof, provides that: "The objects of this association shall be to provide and maintain an organized center for the investigation, discussion and improvement of the civic, business and social affairs of the City of Saint Louis, and more especially as they pertain to women, and to provide club room, library and other conveniences for its members; provided that the organization as such shall never be committed to the endorsement of any particular measure."

So, it will be observed that both the articles of association of incorporation, and the club's constitution, give the same prominence to the social phase that they give to the educational and civic phases. It is, of course, to be granted that, standing alone, the club would not be concluded by either its articles of incorporation or its constitution, especially in a case, as here, wherein more than one object of the club is set out, and wherein certain activities would render it taxable, and others nontaxable. In short, the club could, if it had chosen to do so, have devoted its activities to those things set forth in its charter, which are not within the taxing statute, and refrained from carrying on those activities which render it taxable, under the statute. The reason for the rule is too obvious to render exposition necessary.

The legal rule laid down in the ruled cases fairly follows the construction of this taxing statute laid down by the Revenue Department. If the rule is correct, its origin is immaterial, even though such a rule, constituting, as it does, a judicial interpretation of a statute by a nonjudicial body, might otherwise invade a prerogative committed alone to the co-ordinate judicial branch of government. It is obviously necessary that the field force of the Revenue Department shall have promulgated, for its guidance, rules for the application of taxing statutes. To this extent regulations are necessary, even if such regulations impinge, as here, upon statutory interpretation, not at all a function of an executive bureau. But the point I stress is that such an interpretation does not bind the judicial body. If it happen that the interpretation put upon the statute be correct, or that the ineptitude or the indolence of the courts induce acceptance of the departmental interpretation, it then becomes a judicial rule and

a judicial interpretation, and should be followed. Thus here, because the courts have accepted it, and so the rule is that "any organization which maintains quarters or arranges periodical dinners or meetings for the purpose of affording an opportunity of congregating for social intercourse, is a social * * * club or organization, within the meaning of the Act (section 801, Revenue Acts 1918 and 1921 [40 Stat. 1121; 42 Stat. 291]) unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, * * * but if the social features are a material purpose of the organization, then it is a social club."

Confessedly, I find a difficulty with the above interpretation because of the use of the terms "material purpose" and "predominant purpose" in the same sentence; the former referring to the social activities and the latter to the business, educational, and so forth, activities. The word "material" is obviously not a synonym of "predominant." "Material" connotes less than half, and "predominant" more than half. There might well be a predominant purpose, but a diametrically different actual practice. Purpose might well be deduced from the articles of association or the constitution, while practice would be found from functions performed and activities engaged in. If purpose alone shall be the test, activities could vary from purpose infinitely, and yet taxation be escaped.

So, I think the rule of the department intends, and the proper construction of the statute is, that if any material, that is, important, substantial, part of the club's activities (but not necessarily as much as a moiety thereof), are social, as contradistinguished from the remaining nonsocial activities, it is taxable; otherwise, of course, it is not taxable.

■■ As said already, thorough-going reliance cannot be put on the language of either the articles of association or the constitution, or both. But both of these instruments may be considered in connection with the actual functions and activities of the plaintiff. So here, not only do the articles of association and constitution of the club prescribe as among its objects the providing and maintenance of "an organized center for the investigation, discussion and improvement of the * * * social affairs of the City of St. Louis * * * as they pertain to women and to provide club rooms, library and other conveniences for its members," but the programs and publications promulgated by the club show that during the period here in controversy, either 39 per cent. or 58 per cent., approximately (according to whether the eleven doubtful activities of the club are allocated to the one side or to the other), constituted matters which were social rather than civic, artistic, or educational.

I am not able to say that such a per cent. of total activities does not constitute a material part of the club's functions. Of course the mathematical predominance of nontaxable activities is obvious; but, nevertheless, the taxable functions are so numerous as to constitute, in my opinion, a material part of the club's performed functions. I do not attempt to contrast, except mathematically, the relative importance of these dual activities. There is no evidence on which to weigh one as against the other; neither do I think relative importance, even if it could be found, enters into the legal equation to an extent which makes it material or relevant. These views render it unnecessary to pass on the question of the statute of limitations.

So, it follows, that judgment in the consolidated case should be for defendant, that it go hence and recover its costs, and so it is ordered.

These findings and conclusions may be taken in lieu of a formal finding of facts and conclusions of law; but if counsel shall deem further findings and conclusions necessary, I shall pass on and settle any findings and conclusions which may be, in ten days, submitted by counsel on either or both sides.