## TWO–THIRTY–THREE CLUB v. WELCH.
### No. 3776.

District Court, S. D. California, Central Division.

Oct. 25, 1932.

Dempsey & Mackay, of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., Ignatius F. Parker and Alva C. Baird, Asst. U. S.

964

Attys., all of Los Angeles, Cal., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

JAMES, District Judge.

The plaintiff having been required to pay the total sum of $12,509.25 as a tax on dues and membership fees covering the period from August, 1924, to July 31, 1927, brought this suit against the collector to recover the same. Its contention is that during the time mentioned it was not a social, athletic, or sporting club or organization. The statute in force at the time designated the three classes mentioned only as being liable for the payment of such taxes. (43 Stat. 321; unchanged in 1926 [26 USCA § 872 note]). The statute is now quoted from:

"Sec. 501. On and after the date this title takes effect there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1921, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system, or to any local fraternal organization among the students of a college or university."

Plaintiff alleged that the purposes for which it was organized, and which were carried out in practice, were that "of promoting and fostering the high civic and spiritual ideals embodied in Masonic organizations and of rendering help, financial as well as spiritual, to its members, their widows and orphans." By the evidence introduced at the trial, the following facts were shown: Prior to the organization of plaintiff club there had existed in the City of New York a regular lodge of Masons designated as "Pacific Lodge 233." Its members in the majority belonged to the theatrical profession. Just prior to the organization of the plaintiff, it had been found that there were fifty-four members of the New York lodge residing in Los Angeles and vicinity, most of whom were engaged in theatrical work. It was arranged by a group of the latter to form an organization at Hollywood, to include such resident members of the New York lodge, and others, and the name chosen was an adaptation of a portion of the name of the New York lodge. The Hollywood organization was incorporated as a nonprofit club. One of the requirements was that every person admitted should be a member of the regular Masonic order in good standing. The club was organized with the approval of the ruling authority of the Masonic order in California. It met twice each month. Meetings were held in a Masonic lodge room and no other quarters were maintained. Aside from the lodge room proper, the only room used by the organization was a small room where the secretary kept his books and records, except that refreshments were from time to time served in the basement of the building after the adjournment of the meetings. Ninety per cent. of the members were engaged with the theatrical profession, 10 per cent. were Masons not so connected. The meetings were secret, during which a ritualistic ceremony, described by the witnesses as "dignified, beautiful and impressive" was regularly carried through. This ceremony was used at all initiations. At these meetings there was occasionally music, and members of the profession would, for the entertainment of the members, put on "skits" or short dramas; others would sing. During the period mentioned there was one ball or dance held and one picnic. The by-laws described the purposes of the organization as follows:

"Article 2

"Purposes.

"The purposes of the Club are:

"(a) To promote among its members the practical application of the tenets of Freemasonry and to cultivate broader relations of co-operation and cordiality with Masons everywhere, particularly in Hollywood and its immediate vicinity.

"(b) To strive to become a constructive and generally uplifting force for the good of its members and the community at large.

"(c) To maintain and eventually own a Club House.

"(d) To engage in enterprises which shall enable the Club to become self-sustaining and have surplus funds to be used in relieving distressed members, their widows and orphans, and to contribute to whatever charities shall be deemed worthy.

"(e) To provide entertainment for the members, their families and guests, and

"(f) To devise ways and means in assisting and promoting the interest and welfare of its members, individually and collectively, to the end that none might want but that all might prosper."

One of the members gave as the ideals of the club "to renew the obligations of the members as Masons, to promote and conserve Masonic ideals, and American ideals." The sick and disabled among the members were visited and furnished aid, if needed. It was testified that the "banquets" described in the minutes consisted only of sandwiches and light refreshments prepared and served by members or their wives. During the period for which the tax was assessed there were seventy-two meetings of the club. After seventeen of those meetings refreshments were served; at ten, what was known as "hilarity" was indulged in; that at five of the meetings there was entertainment such as has been referred to, furnished by the members. That at eleven of the meetings music was supplied. The minutes showed that at two meetings arrangements were authorized to be made for "ladies nights." Making a deduction of activities just scheduled, from the total number of meetings held, it is shown that at thirty-one meetings there were no functions except the regular routine, consisting of initiation ceremonies. The organization continued as a secret order much in the same fashion as do commonly known fraternal lodges. Its purposes, as exemplified in practice, were in the main to promote Masonic precepts and principles. While not a part of the Masonic organization, it was an adjunct thereto, working with the approval of the supervising officers of that order. Its ritualistic work being of a secret nature was not fully described by the evidence, but its character was clearly shown. It approached the form of a "fraternal" association "operating under the lodge system" while not strictly falling within such a class. If it had, by specific terms of the statute, it would be exempt from taxation, regardless of the entertainment features referred to.

Treasury regulations have given an interpretation of the statute, which has generally been viewed as correct by the courts, in the following language: " * * * Any organization which maintains quarters or arranges periodical dinners or meetings for the purpose of affording an opportunity of congregating for social intercourse, is a so-

cial * * * club or organization, within the meaning of the Act unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, * * * but if the social features are a material purpose of the organization, then it is a social club."

The entertainment of the members of the plaintiff by others of their number was occasional. No formal programs were presented. The membership being largely drawn from persons engaged in theatrical work, there were those who could sing or perform, and, upon request, they made use of their talent at the meetings, after the serious ritualistic work had been concluded. The serving of coffee, sandwiches and the like in the basement room after adjournment of the meetings was not a regular or understood event. The amusement and other features of a social character seem to have been altogether incidental. They were beside the predominating and steadily pursued purposes declared in the by-laws. There have been many cases where the statute has been interpreted but their citation is of little aid here. The decisions have turned upon facts peculiar to the cases being then considered. The Circuit Court of Appeals for the Seventh Circuit has set forth a list of practically all of the cases decided prior to June, 1931, in its decision in Fleming v. Reinecke, 52 F.(2d) 449, 450, 80 A. L. R. 1293. At the argument there was added the citation Town Club of St. Louis v. U. S. (D. C.) 60 F.(2d) 628. In Fleming v. Reinecke the Traffic Club of Chicago claimed exemption from tax upon its dues and membership fees. It possessed extensive club quarters with a dining room and kitchen, various musical instruments, a library, and shower baths, and regularly served luncheons and dinners. It was held taxable. The court expressed in one paragraph of the opinion its construction of the statute, which is the only expression of any value under the different facts of this case. It said: "It would seem to be more consistent with the purpose of this legislation to say that an organization is a social club if its activities are largely social, even though the actuating motive of the members in joining was to secure business contacts, than to call such an organization a business club because its members are engaged in business, or they joined the club to secure, through its social activities, business contacts."

If we apply that interpretation here, it must be said that the activities of the Two-Thirty-Three Club were more largely non-social; that the social and entertainment features were incidental only. Holding that opinion I reach the conclusion that under the facts presented, plaintiff is not subject to taxation as to its membership fees and dues. It follows that judgment should be entered in its favor and it is so ordered.