**DUQUESNE CLUB v. BELL, Former Acting Collector of Internal Revenue.**

**SAME v. DRISCOLL, Collector of Internal Revenue.**

Civil Actions Nos. 412, 413.

District Court, W. D. Pennsylvania.

April 3, 1941.

Edward Holloway, of New York City, Geo. B. Furman, of Washington, D. C., and Reed, Smith, Shaw & McClay (by Robert L. Kirkpatrick), all of Pittsburgh, Pa., for plaintiff.

Donald J. Marran and Jno. J. Pringle, Sp. Assts. to Atty. Gen., and E. W. Finkel, Asst. U. S. Atty., of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

These two suits were tried before the court without a jury. The plaintiff is seeking to recover federal taxes paid by the plaintiff upon dues and initiation fees during the period from June 1, 1935, to July 1, 1938. The action at No. 412 covers plaintiff's claim for the period from September 1, 1935, to March 1, 1936, and the plaintiff's claim is for $6,578.58 with interest. The action at No. 413 covers plaintiff's claim for the period from March 1, 1936, to July 1, 1938; and the plaintiff's claim is for $68,765.52, with interest.

The question at issue in the case is whether or not the plaintiff is a social club within the meaning of Section 413 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 441, and therefore subject to the tax there prescribed upon membership dues and initiation fees.

Treasury Department Regulation 43, promulgated under the Revenue Acts of 1926 and 1928 (revised October, 1928), defines a "social club" taxable under the Acts, as follows: "Art. 36 Social Clubs. —Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity for congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of com-.

merce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * * club or organization' within the meaning of the act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system, or are local fraternal organizations among the students of a college or university, payments to them are expressly exempt."

The plaintiff contends that it is not a social club taxable under the act, because such social features as it may have are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, i. e., the furtherance of the business relations of its members who join it and use it as a meeting place with their associates and competitors in business conferences and in furtherance of their business relations.

The defendant, on the other hand, contends that plaintiff is a social club as defined by statute, and therefore taxable.

█ The test to be applied in determining whether or not a club is a social club taxable under the statute is stated by the Circuit Court of Appeals of this Circuit in Union Club v. Heiner, 99 F.2d 259, as follows:

"The basic question in this case is whether The Union Club of Pittsburgh, the taxpayer, was in operation a social club and as such subject to taxation, or was it in operation a business luncheon club and therefore not subject to taxation.

"In determining that question the weight of the authorities indicates the test is whether, in its actual working, business was an incident to social or social features incidental to business."

█ Applying that test to the facts of these two cases, we must find, for the years involved in these two units, the Duquesne Club was a business club, and not a social club taxable under the act. Indeed, we find present in the instant cases, the very features which were held by the Circuit Court of Appeals in Union Club

v. Heiner, supra, to render that club not to be taxable, towit, "that in operation, in purpose and in service it was a business club, largely financed by business companies for business purposes, and that whatever social elements were used were mere minor elements to the dominant purpose of business and business alone." Union Club v. Heiner, supra, 99 F.2d page 262.

The facts which lead us to the conclusion that plaintiff is a business club are these. The Club's location and activities are in the center of the business district of Pittsburgh. Practically its main use is during the luncheon period, at which time its facilities are used to capacity. Before and after this period the Club is little used, and save for the bedrooms and one small dining room, is closed down at night. The Club has about seventeen hundred members. The membership is largely made up of business men. Business leaders and corporation executives of Pittsburgh account for at least two-thirds of the membership. Because of the opportunities provided for business contacts through the Club, many corporations pay the club-dues of their higher officials. A large number of private dining rooms has been provided by reason of the demand for quarters where business matters could be discussed in privacy during the luncheon period. The chief use of the Club and its facilities is during the luncheon period. In many cases the same groups eat together from day to day. Many of these groups are from a given business concern or a given industry that meet daily at the Club for luncheon. Certain of the private dining rooms are rented by certain groups from month to month for business conferences of various types, including directors' meetings, meetings with business associates, and business competitors.

The large number of dining rooms maintained by the Club was designed to meet the demands of members, particularly business and industrial groups, who desire privacy at their luncheons when they discuss their business affairs. The groups are often made up of the executives of a business concern, who are entertaining business men from out of town. Members engage bedrooms at the Club for the use of their out-of-town acquaintances and associates.

The main meal is the daily luncheon, when almost ninety per cent of the total

meals are served. The Club has forty-four dining rooms with a seating capacity of about twelve hundred persons, and more dining capacity is needed.

Save for its business purpose, the Club offers little to maintain membership. There are practically no social activities, amusements, or entertainments. There are facilities for cards and billiards; but the use of these is insignificant. The Club has no entertainment committee. Ladies are not permitted in any part of the Club, except in a dining room designated for wives and families of members. The only exception to this rule is that on New Year's Day, when wives of members are admitted to all parts of the Club. There is, however, no New Year's party. The Club has no place for dancing. There are no dances, receptions, card parties, or anything of that sort. There are no facilities for golf, hand-ball, tennis, or other sports. The Club maintains a health department, with a physician in charge, with facilities for massage, electrotherapy, and hydrotherapy. There is certainly nothing of a social nature in that. Liquor is served in the Club, but there is no cocktail lounge or cocktail hour in the Club. The liquor, like the food served at the Club, are adjuncts only to the predominant business activity of the Club.

The Club does not sponsor any social functions, entertainments, or amusements. There are no lectures, dances, theatricals, motion pictures, teas, club lunches, or dinners.

The Court of Claims, in the case of Duquesne Club v. United States, 23 F.Supp. 781, dismissed claims of this plaintiff for taxes paid by it from June, 1929, to August, 1935. The Court of Claims, in these cases, held that the predominant purpose and use of the Duquesne Club, during the period involved in these cases, was a meeting place for business and professional men for luncheon, where they can meet and discuss business matters with associates and competitors, as well as make acquaintances and social contacts of value in future business relations. The Court of Claims then went on to hold that in order to serve that predominant purpose, many features were provided which were of a social nature, including means for amusement, relaxation, and conveniences, such as pool, billiard and card facilities, health department, bar-rooms, lounges, bedrooms, and extensive furnishings; and that these social features were not merely incidental to the life of the Club, but were material to its operation and existence.

We are unable to find from the evidence in these cases that during the period involved in the present suits, towit, from September 1, 1935, to July 1, 1938, the Club provided any social features that were material either to its operation or existence; that the facilities and conveniences which the Club provides are merely incidental to the predominant purpose of the Club, which is the promotion and advancement of business and professional interests. In the case of Houston Club v. United States, Ct.Cl., 58 F.2d 487, the court held that, although there were billiard and pool tables available, and that private bedrooms were maintained by the Club, those features did not make it a social club, where the predominant purpose of the Club was the promotion of business interests. In Builders' Club of Chicago v. United States, Ct.Cl., 58 F.2d 503, the club operated a billiard room, and the court, in holding that it was not a social club, said that Congress had no intention of making every club that served luncheons to its members, and permitted them to remain afterwards in the club-rooms for purposes or reasons not connected with the predominant object of the club, subject to the tax. In Cosmos Club v. United States, Ct.Cl., 42 F.2d 321, the club maintained a billiard room used by ten members each day, maintained a card-room for its members, and forty-eight private bedrooms. Yet, the court held that the few social features of the club were but incidental to its predominant purposes. In the case of Bankers' Club v. United States, Ct.Cl., 37 F.2d 982, the court held that although the club's furnishings were elaborate and expensive, its quarters, inviting and its resources great, it was not taxable as a social, athletic, or sporting club or organization. In that case, the court said, on page 985 of 37 F.2d: "* * Neither the Taxing Act nor the regulations of the Bureau discriminate between an imposing organization and one less ornate and attractive."

The same thing can be said of the Duquesne Club, as the court said of the Union Club of Pittsburgh in Union Club v. Heiner, supra, that the Club was necessarily under the Pennsylvania statute chartered as a social club; but that does not

prevent the Club, in its subsequent operation, functioning as a business club. Except that the Duquesne Club is more expensive and elaborate, and has more resources, there is nothing to distinguish it from the Union Club of Pittsburgh, as described in the Union Club case cited above.

The decision of the Court of Claims in the case of Duquesne Club v. United States, supra, being for different tax period than the one involved in these suits, would not justify the application of the doctrine of res adjudicata. The determination that the plaintiff was a social club during an earlier tax-period would not be res adjudicata of the question of whether it was such a club in a subsequent period. These suits are analogous to those involving questions as to whether a corporation's activities were "charitable" or whether a corporation was "doing business" in the respective taxable years: Peck v. Commissioner, 34 B.T.A. 402; Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323. A case involving the depreciation of certain machinery has been held to be free from application of the rule of res adjudicata, on the ground that it necessarily involved a continuing judgment as to the depreciation rate, which judgment might properly and honestly vary from year to year.

An order for judgment in accordance with this opinion, and our findings of fact and conclusions of law, may be submitted upon notice to opposing counsel.