**ENGINEER'S CLUB OF PHILADELPHIA
v. UNITED STATES.**

No. 44568.

Court of Claims.

Nov. 3. 1941.
As Amended Feb. 2, 1942.

186

John E. Hughes, of Chicago, Ill. (William Cogger, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson, of Washington, D. C., on the brief), for defendant.

Before WHALEY, C. J., and JONES, LITTLETON, MADDEN, and WHITAKER, JJ.

MADDEN, Judge.

Plaintiff sues to recover taxes paid by it which were levied by the defendant upon it pursuant to Section 501 of the Revenue Act of 1926 as amended by Section 413(a) of the Revenue Act of 1928.

The section is as follows:

"§ 413. Club Dues Tax

"(a) Section 501 of the Revenue Act of 1926 is amended to read as follows:

" 'Sec. 501. (a) There shall be levied, assessed, collected, and paid a tax equivalent to 10 per centum of any amount paid—

" '(1) As dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year; or

" '(2) As initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $25 per year.

" '(b) Such taxes shall be paid by the person paying such dues or fees. * * * ' "
26 U.S.C.A. Int.Rev.Code, §§ 1710, 1711, 1712.

Article 36 of Regulations 43, first promulgated in 1917, and in effect since that time, is as follows:

"Art. 36. Social Clubs.—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Act, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * * club or organization,' within the meaning of the Act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization.' Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system, or are local fraternal organizations among the students of a college or university, payments to them are expressly exempt.

*    *    *    *    * "

The period for which the taxes in question were paid was July 1935 to January 1938. Plaintiff filed a timely claim for refund of the taxes, asserting as the basis for its claim an opinion of the United States District Court for the Eastern District of Pennsylvania. That opinion was rendered in connection with two decisions of the District Court in favor of plaintiff, one against the defendant, covering the period January 1932 to February 1935, the other against one Rothensies, Collector of

Internal Revenue, covering the period March to June 1935. In each case the Court held that the taxes paid by plaintiff under the section of the statute here involved could be recovered by plaintiff because it was not, during those periods, a social club for tax purposes. Plaintiff's claim for refund of the taxes here involved was denied by the Commissioner and plaintiff brought this suit.

Our first question is whether we are free to determine whether or not plaintiff was a social club during the period 1935 to 1938 here in question. Plaintiff says we are not; that the question of social club vel non is res judicata by reason of the District Court decisions.

In our opinion plaintiff's operations for the period July 1935 to January 1938, were, for tax purposes, those of a social club. Laying aside the question of res judicata, it would follow from that opinion that the taxes were properly collected, and may not be recovered. That opinion is in accord with many decisions of this court.[1] It is urged upon us, however, that regardless of that opinion we are bound to conclude, what we do not believe to be true, that plaintiff's activities were not those of a social club because the District Court decided in other cases, one of which was between the same parties and the other between plaintiff and a collector of Internal Revenue, that plaintiff's activities from January 1932 to February 1935 were not those of a social club.

Plaintiff's activities in the latter period, here in question, were not those of the earlier period, previously litigated. They were comparable and similar. We have found that they were substantially the same in nature and extent. But they were a completely different set of events, and they were not the set of events litigated in the earlier cases. We are asked, then, to close our eyes and minds to the facts actually before us, and to give to plaintiff a judgment which we would not give to any other plaintiff whose cause of action had equal merit. We are asked thus to discriminate with regard to a public and recurring duty, the duty to pay taxes, thus setting plaintiff apart from all other taxpayers who resort to this court with similar cases.

The doctrine of res judicata should not be so extended. Any application of the doctrine in tax cases to relieve a taxpayer of, or to subject him to the payment of, a tax in a later year because of litigation with reference to an earlier year, has been criticized.[2] A learned commentator has pointed out that the invocation of the doctrine in tax cases has promoted litigation instead of producing peace, as the doctrine is supposed to do.[3] The instant case is an example. In addition to trying the facts of plaintiff's operations for the three years here in question, it has been necessary to try again the facts which were tried before the District Court covering another period of years, in order to determine whether they were so substantially similar that the doctrine of res judicata would have to be considered. The learned authority cited above suggests the following approach to the question: "Where different taxable years are involved in the two cases, res judicata should be applied much more narrowly than has been true in some cases in the past. Not only should it be confined to issues which are identical in the two cases, but the word 'identical' should be rigidly construed to apply only to situations where the applicable statute is unchanged and all of the controlling events occurred before the earlier of the tax years."[4]

This suggestion seems to us to be wise.

As to the suit in the District Court against the Collector, for the period March to June 1935, immediately preceding the period covered by the present suit, the conclusion of the Supreme Court in Bankers' Pocahontas Coal Co. v. Burnet, Commissioner, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325, is that a judgment in a suit against a collector is not res judicata in a later suit against the Commissioner or the United States, because of a lack of identity of parties.

In the other case in the District Court, the parties were identical with the present parties. But the facts were, as we have said, not identical. They were a differ-

---

[1] See cases cited infra, note 7.

[2] Report of Committee on Federal Taxation of the American Bar Association, 61 A.B.A.Rep. 821 (1936).

[3] Griswold, Res Judicata in Tax Cases, 46 Yale L.J. 1320 (1937).

[4] Griswold, op. cit. at p. 1357.

ent, though similar, set of events. They consisted of a whole course of conduct from day to day in all its details of an enterprise of considerable scope. They were the kind of events which, though similar, might easily vary from period to period enough to change the judgment of the same tribunal though it held the same view of the meaning of the applicable statute.

The decided cases do not apply the res judicata principle to such situations. In the case of Tait v. Western Maryland Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405, the events were as follows: Two predecessors of the railway company had, before 1908 and in 1911, issued and sold at a discount their mortgage bonds. In 1917 the newly formed railway company recognized these outstanding bonds as its obligation. It claimed the right to a deduction from its gross income for income tax purposes for 1918 and 1919 of an amortized proportion of the discount. The Commissioner of Internal Revenue disapproved the deduction, but on litigation through the Board of Tax Appeals and the Circuit Court of Appeals, the Company's position was sustained. The Company later claimed and sued for refunds for the tax years 1920-1925, the statute, regulations and question at issue being the same. The Supreme Court held that the principle of res judicata was applicable. In that case the events sought to be tried in the second suit were the identical historical events which had been tried in the first. The application of the doctrine of res judicata in such a case is not a precedent for its application here. Other Supreme Court cases have not shown any tendency to extend the scope of the principle in tax cases.[5] Nor have the other Federal Courts applied the principle in cases fairly comparable to this case.[6]

We conclude, therefore, that we are free to determine whether plaintiff's activities for the year in question were those of a social club. As already indicated in this opinion, we think they were. The findings of fact show that the social features of the club were not merely incidental, but were a material purpose of the club and an important and substantial part of its activities. This court has frequently held that such clubs are taxable.[7]

In view of our conclusions as to the nonapplicability of res judicata, and as to plaintiff being a social club, it is not necessary for us to re-examine the question of whether the regulation requiring plaintiff to file powers of attorney from its members in connection with the claim for refund was valid. We therefore state no conclusion upon that question.

Plaintiff's petition will be dismissed. It is so ordered.

WHALEY, C. J., and JONES and LITTLETON, JJ., concur.

WHITAKER, Judge.

I concur in the result reached, but for different reasons.

I think the decision of the District Court for the Eastern District of Pennsylvania, holding that this taxpayer was not a social club, is res judicata in this proceeding and precludes us from inquiring whether or not it was in fact a social club. I think we are required to so hold by the decision of the Supreme Court in Tait v. Western Maryland Railway Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405. The testimony in this case is uncontradicted that the purposes and activities of the club in the year now before us were the same as in the year before the District Court. This being true, the

---

[5] United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013; Bankers' Pocahontas Coal Co. v. Burnet, Commissioner, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325.

[6] See 130 A.L.R. 374 for a collection of the authorities. The District Court for the Western District of Pennsylvania has recently declined to apply the doctrine to a case like the present one. Duquesne Club v. Bell, 42 F.Supp. 123, 1941, C.C. H., par. 9368.

[7] Fisler v. United States, 66 Ct.Cl. 220;

Army & Navy Club v. United States, 53 F.2d 277, 72 Ct.Cl. 684; Wichita Commercial & Social Club Ass'n v. United States, 2 F.Supp. 476, 77 Ct.Cl. 80; Union League Club v. United States, 4 F. Supp. 929, 78 Ct.Cl. 351; Chicago Engineers' Club v. United States, 9 F.Supp. 680, 80 Ct.Cl. 615, 621; The Lambs v. United States, 8 F.Supp. 737, 81 Ct.Cl. 216; Century Club v. United States, 12 F.Supp. 617, 81 Ct.Cl. 878; Duquesne Club v. United States, 23 F.Supp. 781, 87 Ct.Cl. 483.

judgment in the former proceeding, that the plaintiff was not a social club, is conclusive here. Tait v. Western Maryland Railway Co., supra, so holds.

But the defendant in this proceeding interposes a defense not raised in the case in the District Court, and this it may do under the authority cited supra. See also Twin Cities Properties, Inc., v. United States, 90 Ct.Cl. 119; Harvey Coal Corp. v. United States, 35 F.Supp. 756, 92 Ct. Cl. 186. That defense is that the plaintiff is not entitled to maintain this suit because of its failure to comply with article 54 of Treasury Regulation 43 (revised), which requires a club seeking a refund of taxes paid on initiation fees and dues to file powers of attorney executed by the members on whose behalf the refund is sought. This question was not considered by the District Court for the Eastern District of Pennsylvania.

The right of a club to maintain an action for the refund of taxes paid on initiation fees and dues has been before this court twice before. In Alliance Country Club v. United States, 62 Ct.Cl. 579, we held that a club was entitled to maintain a suit to recover taxes paid on initiation fees and dues imposed upon its members. In that proceeding the court had under consideration section 801 of the act of November 23, 1921, 42 Stat. 227, 289, 291, but the provisions of that act are the same as the act here under consideration, sec. 501 of the Revenue Act of 1926, 44 Stat. 9, 92, as amended by sec. 413 of the Revenue Act of 1928, 45 Stat. 791, 864, insofar as is material here. Both that act and the act before us provide that the taxes are to "be paid by the person paying such dues or fees." After having quoted the provision of a regulation issued by the Commissioner of· Internal Revenue on March 28, 1919, providing that as a condition precedent to the right to claim a refund the club must furnish a sworn statement that no claim for refund had been filed by its members, this court said:

"So it seems that the Treasury Department recognizes and treats the club as the taxpayer, both as the proper party to pay the tax and also as entitled to recover the tax if the same has been illegally or erroneously paid. We are of the same opinion, and therefore think there is nothing in the contention of the Government that the plaintiff is not the proper party to bring this action."

Later, the regulation quoted in that case was changed, and there was adopted instead the regulation now in force requiring the filing of powers of attorney by the members of the club. After this change, there came before us the case of Builders' Club of Chicago v. United States, supra, in which the Commissioner of Internal Revenue refused to refund to the club the taxes alleged to have been erroneously collected for the same reason now advanced in this case, to wit, that the club had failed to file powers of attorney executed by its members authorizing the club to act as their agent. This question was carefully considered by the court, and we held that the club was entitled to maintain an action for the refund of the taxes, notwithstanding the fact that it had not filed such powers of attorney. We said that the requirement that such powers of attorney be filed was "legislation in the guise of a regulation and therefore invalid." [14 F.Supp. 1022, 83 Ct. Cl. 556].

When demand was made upon the plaintiff in this case by the Commissioner of Internal Revenue for the furnishing of powers of attorney, the plaintiff insisted that it was not required to do so, expressly stating that it relied upon our decision in Builders' Club of Chicago v. United States, supra. The defendant replied that the regulation was nevertheless still in force and insisted upon compliance with it. A month later plaintiff's attention was called to the fact that the powers of attorney had not been received and it was notified that they must be sent in within thirty days. Before the expiration of this time plaintiff wrote defendant stating it would be impossible to secure powers of attorney from all of its 1,000 members within that time, and requested an extension until January 3, 1939, a period of about two months, within which to do so. This request was refused and plaintiff was requested to send on such powers as were then on hand. Apparently this was not done, and a month and a half later the claim was rejected for this omission.

Was the Builders' Club case correctly decided? The Act under consideration there and here expressly provided that the taxes were "to be paid by the person paying such dues or fees." The Club was

required to collect the tax from its members and remit it to the defendant, but the member was the taxpayer, that is, the person on whom the tax was levied, and not the club. Therefore, any refund of a tax paid by a member is a refund due the member and not the club. The club has no right to it. If it secures the refund, it must pass it on to its members, unless they consent otherwise.

If this be correct, then it follows that the regulation of the Treasury Department requiring as a condition precedent the filing by the club of powers of attorney from its members authorizing it to act for them is a valid regulation.

The Builders' Club case followed the Alliance Country Club case, decided ten years earlier, in which it was held that the club was the taxpayer, the ground of the decision in the Builders' Club case. The decisions found support in the provision that the club was made liable for the tax whether it discharged its duty of collecting it or not; but I think there can be no doubt that it is on the member, and not on the club, that the tax is levied and, therefore, that it is the member, and not the club, who is the taxpayer, and who, therefore, is entitled to the refund.

This is consistent with what we said on the motion for a new trial in the case of Bunker Hill Country Club v. United States, 9 F.Supp. 52, 10 F.Supp. 159, 160, 80 Ct.Cl. 375, 385. In that case suit was brought to recover taxes paid on initiation fees and dues collected by the Club from its members and remitted to the Government, on the theory that it was not a club, but a profit-making concern. In our opinion on motion for a new trial we said: "On the contrary, the tax on the dues was paid to the corporation merely as an agent to remit the amount so paid to the government. The findings show that the plaintiff 'collected' the tax, entered it on its books under a separate account as payable to the United States, and remitted the same to the collector. Whatever view we may take of the relation of the club members to the corporation, no tax on the dues was paid by the corporation out of its own funds, and no cause of action accrued to it against the government."

This is also consistent with our decision in Twentieth Century Sporting Club v. United States, 34 F.Supp. 1021, 1023,

92 Ct.Cl. 93. The plaintiff in that case sought to recover taxes on admissions to boxing bouts. We denied recovery, saying "But even though the plaintiff had in fact borne the burden of the tax, it nevertheless was not the taxpayer; no taxes were exacted from it by the defendant and there is, therefore, no right given to it under the law to recover. * * * it was the purchaser of the ticket who paid the tax and, therefore, it is only he who has the right to maintain an action to recover."

This was in line with the decision of the Fifth Circuit Court of Appeals in Regents of University System of Georgia v. Page, 81 F.2d 577. In this case the plaintiff brought suit to recover admission taxes paid on admissions to football games held by it, on the theory that it was a governmental agent of the State of Georgia and, therefore, could not be assessed a tax by the Federal Government. This contention was rejected by the Fifth Circuit Court of Appeals on the ground that the purchaser of the ticket was the taxpayer and not the plaintiff. The court said on page 580 of 81 F.2d: "* * * While vigorously denying at all times that any admission tax is due, the appellant first paid it and sought to recover it through administrative channels. This effort failed because the tax payable on admissions is an excise which is added to the price of admission and paid by the purchaser of the ticket. In the absence of a showing that the burden of the taxes was actually borne by it, appellant has no interest in the subject-matter of the controversy and cannot recover either by administrative claim for refund or action at law. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859; Shannopin Country Club v. Heiner (D.C.) 2 F.2d 393; Lafayette Worsted Co. v. Page (D.C.) 6 F.2d 399, 400; Bunker Hill Country Club v. United States (Ct.Cl.) 9 F.Supp. 52; Wourdack v. Becker [8 Cir.], 55 F.2d 840, certiorari denied 286 U.S. 548, 52 S.Ct. 501, 76 L.Ed. 1285. The admission tax statute (44 Stat. 91, § 500, as amended [26 U.S.C.A. Int. Rev.Acts, page 269]) provides that the tax is 'to be paid by the person paying for such admission.' It further provides (44 Stat. 9, § 2) that 'the term "taxpayer" means any person subject to a tax imposed by this Act [26 U.S.C.A. Int.Rev. Code, § 3797(14)].' "

In Shannopin Country Club v. Heiner, D.C., 2 F.2d 393, the club brought suit to collect taxes paid on membership certificates. A demurrer was filed on the ground that the club was not the taxpayer. The court said: "The revenue laws of the United States, under which this tax was assessed and collected by the plaintiff, impose this tax upon the members, and not upon the club itself. Section 801 of the Revenue Act of 1921 (42 U.S.Statutes 291 [Comp.St.Ann.Supp. 1923, § 6309⅝b]). Under this law, there is no primary money liability upon plaintiff to pay this tax. It had no burden, other than acting as collecting agent for the government in collecting the amount of taxes imposed by section 801 of the Revenue Act of 1921. This duty is made clear by section 802 of the Revenue Act of 1921 (42 U.S.Statutes 1921, p. 291 [Comp.St.Ann.Supp. 1923, § 6309⅝c]), which clearly fixes the liability and responsibility of the plaintiff as far as the collection of these taxes is concerned. The plaintiff itself has paid no part of the taxes which it is now seeking to recover, and if it were permitted to recover judgment in this action, it would not in our opinion bar another action by the members themselves, who are the real parties in interest. If the taxes involved in the plaintiff's statement of claim were illegally assessed and collected from the members of the plaintiff corporation, they are the parties injured, and are the ones entitled to recover. There is nothing in the statement of claim which discloses that the plaintiff itself is a taxpayer and has paid any tax to the Government which it now seeks to recover."

No appeal was taken from this decision.

The Seventh Circuit Court of Appeals in Wild Wing Lodge v. Blacklidge, 59 F. 2d 421, held the taxpayer to be the person paying initiation fees and dues, and not the club to which they were paid.

In the following cases various courts have recognized that the club member was the taxpayer, although in none of them was this question directly involved: Munn v. Bowers, 2 Cir., 47 F.2d 204; Fleming v. Reinecke, 7 Cir., 52 F.2d 449, 80 A.L. R. 1293; Foran v. McLaughlin, 9 Cir., 59 F.2d 158; MacLaughlin v. Williams, 3 Cir., 52 F.2d 724.

The Treasury Department has consistently held that the club member, and not the club, was the taxpayer. As far back as 1920 it required a club seeking a refund to file a sworn statement that no claim for a refund had been filed by any of its members, and in 1926 in article 15 of regulation 43, part 2, it said: " * * * Inasmuch as the tax on dues and initiation fees is paid by the person who pays the dues and fees (sec. 501 of the Act) it follows that any refund of the taxes can be legally made only to the club member who paid the tax. The law imposes upon the club the duty of collecting the tax and paying it over to the collector but it is not the taxpayer within the meaning of the law. Consequently, the club has no legal right on its own behalf to a refund of taxes on dues and fees paid by its members."

There has been no departure from this provision. The regulations today provide: " * * * the members and not the clubs are the actual taxpayers. * * * ". (Sec. 101.56 Regulations 43, Revised 1940.)

I know of no decision to the contrary, except our own. I am of the opinion that the Builders' Club case was erroneously decided and should be overruled.

In the Builders' Club case we said this regulation requiring clubs to file powers of attorney from their members was invalid and need not be complied with. This taxpayer relied on what we said and did not comply with it. It now asks us for relief. Can we deny relief because it failed to comply with a regulation with which we said it need not comply?

Were this a court of last resort, I should be inclined to say that the plaintiff had a right to rely on our former decision and would be excused from complying with a regulation we had held to be invalid. But this is not a court of last resort. Other courts may disagree with our view of the law, and sometimes do. They are not bound thereby. They may decide an identical issue in precisely the opposite way, and no one has a right to complain that they did not follow our decision. The Treasury Department is not bound by our decisions. It has the right in other cases to persist in its view of the law and to undertake to have its views sustained by other courts. It has the right to persist in its view until it is finally rejected by the Supreme Court. It has the right to come back before us and undertake to demonstrate to us that we were wrong in

our prior decision. And, convinced of our error, it is our plain duty to correct it.

All of this must have been known to the plaintiff; at least it is charged with that knowledge. That being so, was it entitled to rely on our decision in the Builders' Club case? If not, it cannot complain if we should refuse to follow it. That opinion did not make the law, as an opinion of the Supreme Court would have done. It was dispositive of the case in which it was rendered, but, as a precedent, it was advisory only. It did not settle the law. It had no ultimate, controlling force. The final declaration of the law is committed to the Supreme Court. Until that court acts, litigants can rely on the opinions of intermediate or nisi prius courts only at their peril.

So when the plaintiff was confronted by the continued insistence of the Treasury Department that it comply with this regulation, it could refuse to do so only at its peril. The decision of this court gave it no absolute assurance that the regulation was invalid and could not be enforced. If plaintiff were appealing to some other court, our prior decision would not afford it protection. It must follow that it is not entitled to protection here, because the law before us is the same as it is before other courts. Courts may differ in their view of what the law is, but when the law has been finally determined, that law must be applied uniformly. It cannot be one thing before this court, and another thing before some other court.

Our prior decision having been erroneous, as I think, and the regulation having been valid and plaintiff not having complied with it, I think that it is not entitled to recover.

I concur in the result reached by the majority for the foregoing reasons.