[No. 37181.    Department Two.    April 9, 1964.]

THE STATE OF ALASKA, *Appellant*, v. SAM E. BAKER *et al.*, *Respondents.**

*Aiken, St. Louis & Steere*, by *Robert C. St. Louis* and *Charles E. Siljeg* (*George N. Hayes*, Attorney General of State of Alaska, of counsel), for appellant.

*Bruce T. Rinker*, for respondents.

*Reported in 390 P. (2d) 1009.

LANGENBACH, J.†—This action was brought by the appellant, State of Alaska, under the authority of RCW 4.24.140, and chapter 71, Session Laws of Alaska, 1955, to recover business license taxes allegedly owed by the respondents for the year 1959.

It was submitted to the trial court upon an agreed statement of facts. The pleadings were supplanted by a pretrial order which set forth the various facts and questions of law of the respective parties.

During all times material, the respondents were engaged in the general contracting business. They were partners domiciled and with their principal place of business in Bellingham, Washington, which gave the superior court jurisdiction to try the issues. During the year 1959, they were not licensed to do business in the state of Alaska under the Alaska Business License Act, hereinafter referred to as ABLA. They had been awarded several contracts by the United States Government to perform work on United States military reservations in Alaska. All of the work thus contracted for and subsequently performed was done exclusively and entirely upon United States military reservations. The tax for 1959 was imposed by Title 43, Alaska Statutes, § 43.70.010, et seq. It pertained entirely to the activities of the respondents in Alaska during that year.

Appellant alleged that respondents were indebted for business license taxes for the year 1959 in the sum of $15,671.12 plus penalties of $3,917.78, and interest accrued to February 19, 1962, in the sum of $1,861.05.

The respondents denied the allegations of the complaint and later pleaded affirmatively the 2-year statute of limitations against the collection of statutory penalties and interest.

After the trial and hearing, the trial court found the facts generally as above detailed. It also found that, by reason of the facts that respondents' activities in Alaska were performed entirely on United States military reserva-

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

tions and the United States Government had granted the appellant state no rights or jurisdiction over such United States military reservations, except as provided by virtue of 4 U.S.C.A. §§ 105-110 (the Buck Act), the respondents were not obligated to comply with the provisions of ABLA. They were independent prime contractors engaged in performing those contracts solely on United States military reservations; the amounts to be paid under ABLA were not income taxes or sales or use taxes within the meaning of the Buck Act.

The record showed that the complaint was verified March 26, 1962. The answer was verified March 30, 1962. The amended answer alleging that the 2-year statute of limitations under Alaska Compiled Laws Annotated, § 55-2-7 barred the action was verified December 3, 1962. In its findings and judgment, the trial court determined that the penalties and interest could not be collected and dismissed the entire action. This appeal followed.

The contested issues in the appeal are:

1. The right of the state of Alaska to force respondents to comply with ABLA where the only work being performed is under contract with the United States Government exclusively on United States military reservations as a result of competitive bidding.

2. The right of the state of Alaska to bring this action and recover from respondents (a) ABLA tax for the year 1959, and (b) statutory penalties and interest therefor.

The main argument of the appellant is that ABLA, § 43.70.010 *et seq.*, is a revenue measure in spite of the language in the act pertaining to licensing.

Both parties agreed that, prior to the passage of the Buck Act (1940) 4 U.S.C.A. §§ 105-110, the various states of the Union had no legal basis for imposing a tax on the activities of a business or individual, when such activities were carried on exclusively within the confines of a federal reservation. They are also in agreement that the effect of the Buck Act was to grant to the states certain taxing powers. This is specifically provided in 4 U.S.C.A. § 106:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

The Buck Act in § 110 defined permitted taxes as follows:

"(b) The Term 'sales or use tax' means any tax levied on, with respect to, or measured by, sales, receipts from sales, purchases, storage, or use of tangible personal property, except a tax with respect to which the provisions of section 104 of this title are applicable.

"(c) The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts."

It is admitted by both parties that the state of Alaska does not have a sales or use tax. It is also admitted that the state has a net income tax and the respondents have paid their taxes thereunder.

The primary question becomes a determination as to whether the ABLA comes within the scope and purview of the Buck Act. Stated in another way, is the ABLA a revenue or a regulatory measure? The appellant contends that it is a revenue measure, constituting an income tax within the purview of the Buck Act. The respondents equally assert that it is a regulatory enactment within the police power.

The trial court, in support of its determination of the question as stated by it, set forth its conclusions as follows:

"The Alaska Business License Act is invalid as to the defendant in this case on two grounds, (1) Lack of jurisdiction in the state to legislate concerning permits, licenses or fees for the same, and (2) conflict between the state legislation and existing federal laws as to control over government contractors."

In support of its position, appellant cited 4 Cooley, Taxation (4th ed.) § 1784, p. 3509:

"It is often necessary to determine whether an imposition of a charge or fee by the government, generally in the shape of a license fee, is an exercise of the taxing power, i.e., a tax in the strict legal sense of the term, or is an exercise of the police power. . . .

" . . .

"The distinction between a demand of money under the police power and one made under the power to tax is not so much one of form as of substance. The proceedings may be the same in the two cases, though the purpose is essentially different. The one is made for regulation and the other for revenue. If the purpose is regulation the imposition ordinarily is an exercise of the police power, while if the purpose is revenue the imposition is an exercise of the taxing power and is a tax. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. However, regulation may be kept in view when revenue is the main and primary purpose. The right of any sovereignty to look beyond the immediate purpose to the general effect neither is nor can be disputed. The government has general authority to raise a revenue and to choose the methods of doing so; it has also general authority over the regulation of relative rights, privileges, and duties, and there is no rule of reason or policy in government which can require the legislature, when making laws with the one object in view, to exclude carefully from its attention the other. Nevertheless, cases of this nature are to be regarded as cases of taxation. Revenue is the primary purpose, and the regulation results from the methods of apportionment that are resorted to in obtaining the revenue. Only those cases where regulation is the primary purpose can be specially referred to the police power. If revenue is the primary purpose and regulation is merely incidental the imposition is a tax; while if regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax, . . ."

*Terry v. Portland*, 204 Ore. 478, 495, 269 P. (2d) 544 is also cited by appellant. The state of Oregon had licensed "coin-in-the-slot" machines at $50 per year. The city of Portland passed an ordinance banning such machines. The plaintiff challenged the ordinance on the ground that the state had preempted such regulations. It was held that the state law was a license for revenue only without regulation.

The city ordinance was a regulatory act prohibiting the possession and use under the police power. The court said:

"It is common to find in measures enacted under the police power many regulations which, if violated, subject the offender to punishment, but, generally, taxing legislation permits of only one violation, that is, nonpayment of the tax. . . ."

The opinion also cited the above quotation from Cooley on Taxation, and quoted further:

"Generally, a fee or charge is an exercise of the police power rather than a tax where certain tests, conditions or qualifications are imposed in addition to the payment of money. But the mere fact that . . . a license statute makes a violation of its provisions a misdemeanor does not preclude the license fee being an exercise of the taxing power rather than the police power. . . ."

■ The distinction between a license fee and a license tax is succinctly set forth in 53 C.J.S., Licenses § 3, p. 452:

"If the fee is exacted for the primary purpose of regulating or restraining an occupation or privilege deemed dangerous to the public or to be specially in need of public control, and compliance with certain conditions is required in addition to the payment of the prescribed sum, such fee is a license fee or license tax proper imposed in the exercise of the police power and is not strictly speaking an ordinary tax, even though it is called a tax in the legislation which imposes it. A charge imposed as a consideration for a privilege granted one by a governmental unit is not a 'tax' in the sense in which that word is ordinarily used.

"Where the fee is exacted solely or primarily for revenue purposes and payment of the fee gives the right to carry on the business or occupation without the performance of any further conditions, it is not a license fee but a tax imposed under the power of taxation, regardless of the name by which it may be called, or the mode adopted to enforce payment. The power of the licensing authority to revoke the license is not necessarily evidence that the fee required for the license is a regulatory rather than a revenue measure."

Appellant further contends that the tax imposed by ABLA is an income tax on gross receipts within the purview of 4 U.S.C.A. §§ 105-110, *supra*. The case of *Howard v. Com-*

*missioners of Sinking Fund of Louisville,* 344 U.S. 624, 97 L. Ed. 617, 73 S. Ct. 465, is cited. This case involved the occupational license fee ordinance in the city of Louisville, Kentucky. The court therein sustained the imposition of the tax against the employees of a federal installation. That ordinance required an annual license fee for the privilege of engaging in business activities, which license fee shall be measured by 1 per cent of (a) all salaries, wages or other compensation earned by every person in the city, and (b) net profits of all businesses conducted in the city. In the course of that opinion, the United States Supreme Court said, p. 628:

"But the appellants next argue that the Court of Appeals erred in holding that the City's occupational tax or license fee was an 'income tax' within the meaning of the Buck Act, though holding that this tax or fee was not an income tax under the Constitution of Kentucky.

"Was this tax an 'income tax' within the meaning of the Buck Act? In a prior case, Kentucky had held this tax was not an 'income tax' within the meaning of the Constitution of Kentucky but was a tax upon the privilege of working within the City of Louisville. *Louisville v. Sebree,* 308 Ky. 420, 429-431, 214 S. W. 2d 248, 253-254. But the right to tax earnings within the area was not given Kentucky in accordance with the Kentucky law as to what is an income tax. The grant was given within the definition of the Buck Act, and this was for *any tax* measured by net income, gross income, or gross receipts. In the instant case, the Kentucky Court of Appeals correctly stated that the question was whether the tax was an income tax within the meaning of the federal law. We hold that the tax authorized by this ordinance was an income tax within the meaning of the Buck Act. . . ."

We agree that the revenue provisions of ABLA are not significantly different from those sustained in the *Howard* case, *supra.*

It is the position of the respondents that this is a regulatory act. As such, it is not within the limits prescribed by the Buck Act. In support of this position, they cite *Leslie Miller, Inc. v. Arkansas,* 352 U.S. 187, 1 L. Ed. (2d) 231, 77 S. Ct. 257. There the plaintiff had been arrested for filing a bid, execut-

ing a contract and commencing work in Arkansas without having first obtained a license under Arkansas law for such activity. He was convicted and appealed.

The requirements of a contractor in Arkansas were set forth in the opinion of the United States Supreme Court, in reversing the conviction, as follows:

" 'The Board, in determining the qualifications of any applicant for original license . . . shall, among other things, consider the following: (a) experience, (b) ability, (c) character, (d) the manner of performance of previous contracts, (e) financial condition, (f) equipment, (g) any other fact tending to show ability and willingness to conserve the public health and safety, and (h) default in complying with the provisions of this act . . . or any other law of the State. . . .' "

The court adopted the rationale of *Johnson v. Maryland,* 254 U. S. 51, 65 L. Ed. 126, 41 S. Ct. 16, as follows:

" ' . . . the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on. . . .' "

The court further said:

" . . . Subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder. . . ."

To same effect: *City of Birmingham v. Thompson,* 200 F. (2d) 505.

Patently the provisions and restrictions in the *Miller* case, *supra,* are more onerous, burdensome and discretionary than are the requirements of ABLA.

Appellant concedes that the regulatory provisions of ABLA (§ 43.70.020, § 43.70.070 and also § 43.10.160) may be invalidated under the separability clause in ABLA, which provides:

"If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the remainder

of the Act and such application to other persons or circumstances shall not be affected thereby." Laws of the Territory of Alaska (1949), chapter 43, § 13.

Some of the sections of the Alaska statutes against which the main assault has been concentrated and directed are as follows:

43.10.160: Every nonresident, as a condition precedent to doing business in the state shall file a sworn statement in affidavit form, with estimated gross receipts, estimated tax and license fees; if owner of real estate and fair market value thereof; if not worth twice the estimated tax and license fees, then a surety bond must be furnished equal to twice the estimated tax and license.

43.10.170: The Commissioner of Commerce must be appointed as agent for service of process.

43.10.200: Provides for penalties for noncompliance up to $1,000 fine or 1 year imprisonment.

43.70.020: Provides for the application for license, stating that any person engaging in a business subject to licensing provisions of a regulatory nature must comply with such regulatory provisions before being entitled to a license under this act.

43.70.030: Provides for a license fee of $25 plus a sum equal to 1 per cent of gross receipts in excess of $20,000 from business during the year.

43.70.060: Provides that if a person fails to file a business license return or pay the fee, unless it is shown that failure is due to reasonable cause and not to wilful neglect, 5 per cent is added for each 30 days, not to exceed 25 per cent in aggregate; that if a person fails to apply for a license or makes erroneous or fraudulent return, the department may assess fee from any information it can obtain.

43.70.070: Provides that amount of fee, interest and penalty constitute a lien in favor of state upon all the person's property located in the state, subject to foreclosure; that a nonresident person who starts to perform contract or other business in the state must state under oath the extent of lienable real and personal property against which

tax may be collected, and if the value is not equal to three times the amount of tax for which the applicant will probably be liable, the tax commissioner shall not issue a license until the applicant has filed a surety bond equal to twice the probable amount of the tax for which the applicant may become liable.

43.70.100: Sets forth the penalty provisions.

43.70.110: Defines gross receipts as meaning all receipts from sources in the state received from engaging in business, without deduction of the cost of material used, labor or service cost.

Appellant contends that ABLA is an enactment for the collection of revenue only and is not a regulatory law. Basically, it must be construed as a revenue measure. The regulatory provisions are primarily for the collection of the tax.

Appellant also conceded the right of separability as set forth, *supra*. A critical examination of ABLA demonstrates that severability is possible without doing violence to the revenue parts of the act. Consequently, certain of the above sections must be construed as being purely regulatory requirements and not revenue producing measures.

The following sections are clearly and plainly regulatory enactments, and being severable, should be severed: §§ 43-.10.160; 43.10.170; 43.10.200; 43.70.020 (d); 43.70.070 (a) (b); and 43.70.100.

In other words, having determined that ABLA is a revenue measure, the respondents may be required to apply for a license to engage in business in Alaska for a primary fee of $25 plus a sum equal to one half of 1 per cent of the gross receipts therefrom in excess of $20,000 from business during any one year. Beyond that, the provisions of ABLA are strictly regulatory measures and are not within the exceptions of the Buck Act.

This action is brought under the provisions of RCW 4.24.140. This section and other pertinent sections and statutes affecting this litigation are as follows:

RCW 4.24.140:

"The courts of the state shall recognize and enforce the liability for taxes lawfully imposed by the laws of any other state which extends a like comity in respect to the liability for taxes lawfully imposed by the laws of this state and the officials of such state are hereby authorized to bring an action in all the courts of this state for the collection of such taxes: . . . *Provided, further,* That the time limitations upon the bringing of such actions which may be imposed by the laws of such other state shall not be tolled by the absence from such state of the person from whom the taxes are sought. . . ."

RCW 4.24.141:

"The term 'taxes' as used in RCW 4.24.140 shall include:

"(1) Any and all tax assessments lawfully made whether they be based upon a return or other disclosure of the taxpayer, upon information and belief of the taxing authority, or otherwise;

"(2) Any and all penalties lawfully imposed pursuant to a tax statute;

"(3) Interest charges lawfully added to the tax liability which constitutes the subject of the action."

RCW 4.16.100:

"Within two years:
" . . .
"(2) An action upon a statute for a forfeiture or penalty to the state."

These statutes are set forth inasmuch as respondents assert that appellant is not authorized to bring this action; but primarily because respondents further contend that the action is barred by the appropriate statutes of limitation. It is alleged in the amended answer that the statute of limitation in Alaska (Alaska Compiled Laws Annotated, § 55-2-7) has a 2-year limitation with respect to statutory penalties. This is the same limitation in our own statute, *supra.*

To recapitulate: The complaint was verified March 26, 1962; the answer was verified March 30, 1962. The amended answer was verified December 3, 1962, and it alleged that the Alaska statute of limitations was 2 years; that the action was thus barred.

Under RCW 4.24.140, the time limitation was not tolled. In addition, RCW 4.16.100, *supra,* established a 2-year limitation against such actions brought in the courts of this state. The definitions in RCW 4.24.141 include penalties and interest, such as are imposed by the various sections in ABLA.

Without the necessity of further authority than these express statutes, the conclusion is irresistible that any efforts to collect any penalties or interest in this action must be barred by such statutes under the agreed statement of facts.

The ABLA is primarily an act for the imposition and collection of a tax for revenue purposes only. It must be reasonably construed as permitting the collection of an income tax based upon the gross receipts of the respondents engaged in doing business in Alaska, within the meaning and intent of the Buck Act. The appellant is thus empowered to issue a license to respondents to engage in their contractual business for an initial fee of $25 plus an additional 1 per cent of the gross receipts in excess of $20,000 from business during the year. *Howard v. Commissioners, supra.*

Those provisions in ABLA, *supra,* which are in the exercise of the police power and impose conditions and qualifications upon the respondents in their contractual relations with the United States Government are hereby declared to be regulatory in nature. As such, they are invalid and prohibited by the limitations and purview of the Buck Act. Such regulations and restrictions upon the activities of the respondents are within the prohibition announced in *Leslie Miller, Inc. v. Arkansas, supra.* Consequently, they must be stricken as an unlawful invasion and interference with the contractual rights of the respondents in the gainful pursuit of their business in Alaska.

Concerning the penalty and interest sought to be collected from respondents, these must be set aside and cancelled as barred by the respective statutes of limitations of the states of Alaska and Washington.

The judgment of the trial court is modified by reversing that portion which held the revenue sections of the ABLA invalid and the court is instructed to enter judgment in the amount of $15,671.12 for business license taxes. As so modified, the judgment is affirmed. Inasmuch as both parties have partially prevailed, neither will be awarded costs.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.

October 16, 1964. Petition for rehearing denied.