STATE of Alaska, Appellant,

v.

Sam E. BAKER and Frank W. Ford d/b/a
Baker and Ford Co., a co-partner-
ship, Appellees.

No. 428.

Supreme Court of Alaska.

July 10, 1964.

894

———◆———

George N. Hayes, Atty. Gen., and David B. Ruskin, Asst. Atty. Gen., Juneau, for appellant.

Charles E. Cole, Fairbanks, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal by the State of Alaska, defendant below, from an order granting summary judgment [1] to the plaintiff-appellees by reason of collateral estoppel.

1. While no formal judgment was ever entered in the case, the state seems to have reckoned its time within which to give notice of appeal from the date of the entry of the *order* for summary judgment. Whether it was correct in thus computing the time has not been made an issue in this case and, therefore, need not be considered at this time.

2. AS 43.70.010–43.70.120 (SLA 1949, ch. 43, as amended by SLA 1955, ch. 128; SLA 1957, ch. 172; SLA 1960, ch. 101; SLA 1962, ch. 152).

The appellees, Sam E. Baker and Frank W. Ford, copartners, who we shall refer to herein as Baker & Ford, brought this suit for refund to them of certain business license fees or taxes and interest thereon, which they had paid to the state under protest for the years 1953–1959. It is their claim that the Alaska Business License Act [2] (hereinafter designated ABLA), under which the taxes were paid is unconstitutional as to them since the only business they ever did in Alaska was construction work performed under contract with the Government exclusively on United States military reservations as a result of competitive bidding.

As the basis for their claim of right to a summary judgment, Baker & Ford rely upon the following facts and circumstances: After they had commenced this action in Alaska, the State of Alaska brought suit against them in their domiciliary State of Washington to collect the business license taxes for the year 1959. They defended there by asserting the same claim made in the Alaska court, namely, that the ABLA is unconstitutional. After trial and hearing, Judge Boone Hardin of the Washington superior court found that the activities of Baker & Ford in Alaska were performed entirely upon United States military reservations, that the Government had not granted Alaska any rights or jurisdiction over such reservations, except to levy and collect thereon income taxes and sales or use taxes as permitted by the Buck Act; [3] and that the amounts required to be paid under the ABLA were not income taxes [4]

3. 4 U.S.C.A. §§ 105–110 [61 Stat. 641 (1947)].

4. One of the provisions of the Buck Act reads:
"No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such

or sales or use taxes within the meaning of the Buck Act.[5]

Judge Hardin reasoned that, even if the tax or fee imposed by the ABLA were held to be a revenue measure, that is, an income tax permitted under the Buck Act, it was, nevertheless, an attempt to collect a fee for a permit or license and constituted an invalid exercise of jurisdiction by the state. He also found that it conflicted with existing federal laws as to control over Government contractors. He thereupon entered judgment dismissing the state's entire action for taxes, penalties and interest.[6]

It is this ruling of the Washington superior court that the ABLA imposed an unconstitutional burden upon their activities as federal contractors which Baker & Ford subsequently used as the basis for their motion for summary judgment in the instant case. Since the parties and the subject matter or transaction are the same in both actions and the only difference is in the taxable years involved, the appellees contend that the prior Washington decision, under the doctrine of collateral estoppel or estoppel by judgment, applies and precludes the state from relitigating the legal issue of constitutionality in the Alaska court.

In its brief on appeal, the state concedes that the doctrine of collateral estoppel precludes a party from relitigating matters that have been previously adjudicated in another action, but argues that the doctrine is not applicable in the present case for the following reasons: (1) because the Washington decision has been appealed to the supreme court of that state; (2) the doctrine does not apply to matters of state taxation or to questions of pure law; and (3) because it would result in an unjust discrimination among taxpayers.

■ As to the first objection raised by the state to the application of the doctrine of collateral estoppel in this case, that issue has become moot in a sense because on April 9, 1964 the Supreme Court of the State of Washington modified Judge Hardin's decision by reversing that portion of the judgment which held the revenue sections of the ABLA invalid.[7]

In what we consider to be a sound opinion, Judge Langenbach,[8] speaking for the Washington State Supreme Court, stated in 390 P.2d at 1016:

"The ABLA is primarily an act for the imposition and collection of a tax for revenue purposes only. It must be reasonably construed as permitting the collection of an income tax based upon the gross receipts of the respondents [Baker & Ford] engaged in doing business in Alaska, within the meaning and intent of the Buck Act. The appellant [State of Alaska] is thus empowered to issue a license to respondents to engage in their contractual business for an initial fee of $25 plus an additional 1 per cent of the gross receipts in excess of $20,000 from business during the year. [Citing Howard v. Commissioners, 344 U.S. 624, 628, 73 S.Ct. 465, 97 L.Ed. 617, 621 (1953).]" [9]

tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area." 4 U.S.C.A. § 106(a) [61 Stat. 641 (1947)].

5. Neither party claims that Alaska has a sales or use tax statute and we take judicial notice of the fact that none such exists. Civ.R. 43(a) (1).

6. The findings and conclusions of the Washington court appear in a "Memorandum Decision" of Judge Hardin in cause No. 38535 in the Superior Court of the State of Washington for Whatcom County. A copy of the "Memorandum Decision" along with copies of the "Findings of Fact and Conclusions of Law" and "Judgment" are contained in the record before us.

7. State of Alaska v. Baker, Wash., 390 P. 2d 1009 (1964).

8. Judge Langenbach was serving as a judge pro tempore of the Washington State Supreme Court.

9. The initial license fee of $25 and the additional tax on gross income above $20,-000, mentioned by Judge Langenbach, are provided for in the ABLA by AS 43.70.-

Judge Langenbach then went on to hold as strictly regulatory measures and not within the exceptions of the Buck Act certain other provisions of the ABLA and statutes relating to nonresident businessmen, such as those requiring nonresidents doing business in Alaska to make a showing of financial responsibility [10] and to appoint the Commissioner of Commerce as agent for service of process,[11] providing for the imposition of criminal penalties [12] and civil penalties as well as interest charges [13] in case of noncompliance, and declaring that the amount of the license fee, interest and penalties shall constitute a lien in favor of the state.[14] However, he pointed out that the regulatory provisions were severable under the severability clause of the ABLA [15] and should be severed.[16]

While the Washington Supreme Court felt that the regulatory provisions of the Alaska statutes mentioned must be stricken as an unlawful invasion and interference with the contractual rights of Baker & Ford in the gainful pursuit of their business in Alaska, it nevertheless disallowed recovery by the State of Alaska of penalty and interest for an entirely different reason as follows:

"Concerning the penalty and interest sought to be collected from respondents, these must be set aside and cancelled as barred by the respective statutes of

limitations of the states of Alaska and Washington." [17]

To summarize, the highest court of the State of Washington has now ruled that the ABLA must be basically construed as an income tax measure within the purview of the Buck Act, from which any regulatory provisions for the collection of the tax are severable by statute.

We proceed now to consider whether the State of Alaska is collaterally estopped by the Washington decision from relitigating the constitutionality of the ABLA. The question is one of first impression in this jurisdiction as the parties discovered in the preparation of their excellent and most helpful briefs on appeal.

The Constitution of the United States requires that the courts of Alaska give full faith and credit to the judgment of the Washington Supreme Court as expressed in the opinion written by Judge Langenbach.[18] And under the doctrine of res judicata neither the Washington courts nor the Alaska courts may relitigate the question of whether or not the business license taxes were collectible by the State of Alaska from Baker & Ford for the year 1959.[19] This doctrine bars a second suit between the same parties on the same subject matter resolving the same issues between the parties in the same capacity or

---

030; however, the additional tax on the gross is not one per cent but only one-half of one per cent.

10. AS 43.10.160.

11. AS 43.10.170.

12. AS 43.10.200.

13. AS 43.70.060(a).

14. AS 43.70.070(a).

15. The separability clause mentioned in the opinion is set forth in SLA 1949, ch. 43, § 13 (now covered by AS 01.10.030) as follows:
"If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of the Act and such application to other persons or circumstances shall not be affected thereby."

16. Supra note 7, 390 P.2d at 1014–1015.

17. Id. at 1016. The Washington court seems to have regarded the interest charged as also being in the nature of a penalty. 390 P.2d at 1015.

18. U.S.Const. art. IV, § 1.

19. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186, 190 (1963); United States v. State of Alaska, 197 F.Supp. 834, 836 (D. Alaska 1961); Lynch v. Collings, 7 Alaska 84, 90–91 (D. Alaska 1923); Thorndyke v. Alaska Perseverance Mining Co., 4 Alaska 117 (D. Alaska 1910); Walsh v. Wolff, 32 Wash.2d 285, 201 P.2d 215 (1949); Curtiss v. Crooks, 190 Wash. 43, 66 P.2d 1140, 1144 (1937).

quality.[20] It is founded upon the principle that parties ought not to be permitted to litigate the same issue more than once and that when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties and those in privity with them in law or estate.[21]

While the general rule of res judicata applies to repetitious suits involving only the same cause of action it has been employed in situations where the second action between the same parties is upon a different cause or demand. But in the latter event the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined,[22] but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. Res judicata is then more accurately referred to as collateral estoppel or estoppel by judgment.[23]

The state is in agreement with the foregoing principles relating to res judicata and collateral estoppel, but insists that the doctrine of collateral estoppel is not applicable to questions of taxation; in other words, a judgment with respect to the tax for one year does not work an estoppel with respect to taxes for other years. There are cases which so hold, the rationale employed being that collateral estoppel would hamper the state in the exercise of its sovereign power to tax. Also, the state, in enforcing its revenue laws, would be forced to appeal every adverse decision, no matter how trivial, to avoid the risk of estoppel in subsequent litigation; and the same could be said of the individual taxpayer faced with an adverse decision in a first tax suit brought against him by the state.[24]

Baker & Ford, on the other hand, call our attention to both federal and state decisions in which it is held that collateral estoppel does apply in tax litigation. One of the outstanding cases in this field of the law is Commissioner v. Sunnen[25] in which the Supreme Court discussed the concepts underlying res judicata and collateral estoppel and then stated:

"These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-lia-

20. Hughes v. Bank of America Nat. Trust & Sav. Ass'n, 78 Cal.App.2d 631, 178 P. 2d 533, 537 (1947); Brown v. Briggs, 292 P.2d 385, 387 (Okl.Sup.Ct.1956); Walsh v. Wolff, supra note 19.

21. Sonnicksen v. Sonnicksen, 45 Cal.App. 2d 46, 113 P.2d 495, 502 (1941); Neuvert v. Woodman, 185 Kan. 373, 343 P.2d 206, 211 (1959); Matthews v. Matthews, 102 Utah 428, 132 P.2d 111, 114 (1942).

22. Res judicata, contrary to collateral estoppel, provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195, 197–198 (1877).

23. Commissioner v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898, 905, 906 (1948).

24. Georgia R.R. & Banking Co. v. Wright, 124 Ga. 596, 53 S.E. 251 (1906); City of Covington v. District of Highlands, 33 Ky.Law Rep. 323, 110 S.W. 338 (Ct.App. 1908); Yazoo & M. V. R.R. v. Adams, 81 Miss. 90, 32 So. 937, 944 (1902); Union & Planters' Bank v. City of Memphis, 101 Tenn. 154, 46 S.W. 557, 561 (1898). Cf. People v. Chas. Levy Circulating Co., 17 Ill.2d 168, 161 N.E.2d 112 (1959); Board of Sup'rs v. Sioux City Stock Yards Co., 223 Iowa 1066, 274 N.W. 17 (1937); Town of Harrison v. County of Westchester, 13 N.Y.2d 258, 246 N.Y.S.2d 593, 196 N.E.2d 240 (1963), affirming 34 Misc.2d 1020, 231 N.Y.S.2d 20 (Sup.Ct. 1962); People v. Haring, 286 App.Div. 676, 146 N.Y.S.2d 151 (1955).

25. Supra note 23.

bility relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.' Tait v. Western Md. R. Co., 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405 [1408]."[26]

The Court then proceeded to note certain limitations on the doctrine of collateral estoppel, as, for example, where supervening decisions of its own or of the state courts so change the legal atmosphere as to render the doctrine inapplicable. In such a situation, the Court said, "the supervening decision cannot justly be ignored by blind reliance upon the rule of collateral estoppel." [27]

The trend among state courts in recent years seems to be to follow the position taken by the United States Supreme Court in Commissioner v. Sunnen, which makes it clear that a taxpayer is not permanently sheltered by an application of the law held later to be erroneous.[28]

■ We are of the opinion that the policy underlying collateral estoppel as set forth in the Sunnen case and the state decisions appearing in footnote 28 below is sound and applicable in all proper cases, including those involving tax litigation; and we assume that the Washington court would so hold if the issue were presented to it.

The state next contends that, even if the doctrine of collateral estoppel is held to apply in tax litigation, it should not be applied to an issue of pure law such as is involved in the instant case, namely, the statutory interpretation to be given the ABLA. The state then cites authorities supporting its view and holding that decisions on questions of pure law may stand as precedents and be given the effect of stare decisis but not of collateral estoppel.[29]

Baker & Ford, on the other hand, point out that the Restatement of Judgments is

---

26. Supra note 23, 333 U.S. at 598–599, 68 S.Ct. at 712–720, 92 L.Ed. at 906.

27. Supra note 23, 333 U.S. at 599–600, 68 S.Ct. at 720, 92 L.Ed. at 906–907. For recent decisions in the lower federal courts in which collateral estoppel was applied in tax cases, see Hunt's Estate v. United States, 309 F.2d 146 (5th Cir. 1962); Hanover Bank v. United States, 285 F.2d 455 (Ct.Cl.1961); Stern & Stern Textiles, Inc. v. Commissioner, 263 F.2d 538 (2d Cir.), cert. denied 361 U.S. 831, 80 S.Ct. 80, 4 L.Ed.2d 73 (1959).

28. For state decisions applying collateral estoppel in matters of state taxation, see Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, 74 S.W. 979, 983 (1903); Pitney v. State Bd. of Tax Appeals, 136 N.J.L. 157, 55 A.2d 6 (Sup. Ct.1947); Town of Atrisco v. Monohan, 56 N.M. 70, 240 P.2d 216 (1952); Boy Scouts of America, Inc. v. Thompson, 380 P.2d 705 (Okl.Sup.Ct.1963). See also Maricopa County v. Southern Pac. Co., 61 Ariz. 269, 148 P.2d 824 (1944), wherein the Arizona Supreme Court 148

P.2d at 828–829 apparently held that the doctrine is applicable to tax cases.

29. The authorities in the order in which they are cited and discussed by the state on the point to which this note is referenced are: Bigelow, Estoppel, 112, 113 (6th ed. 1913); Michigan S. & N. Indian R.R. Co. v. Auditor General, 9 Mich. 448, 449 (1862); accord, Lake Shore & M. S. R.R. Co. v. People, 46 Mich. 193, 9 N.W. 249 (1881); Chicago B. & Q. R.R. v. Cass County, 72 Neb. 489, 101 N.W. 11, 12 (1904); State v. American Sugar Ref. Co., 108 La. 603, 32 So. 965 (1902); People ex rel. v. Louisville & N. R.R., 350 Ill. 274, 183 N.E. 233 (1932); In re Breuer's Income Tax, 354 Mo. 578, 190 S.W.2d 248 (1945); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 7 (1942); Commissioner v. Sunnen, 333 U.S. 591, 601, 68 S.Ct. 715, 92 L.Ed. 898, 908 (1948); Engineers' Club of Philadelphia v. United States, 95 Ct.Cl. 42, 42 F. Supp. 182, cert. denied 316 U.S. 700, 62 S.Ct. 1294, 86 L.Ed. 1769 (1942).

contra, for it states the rule in section 70 as follows:

"Where a question of law essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; and in any event it is not conclusive if injustice would result."

Comment (b) to this section reads in part:

"b. *Where causes of action arise out of the same subject matter or transaction.* Where a question of law is actually litigated and determined in an action, the determination is ordinarily conclusive between the parties in a subsequent action involving the same subject matter or transaction, although based upon a different cause of action from that upon which the original action was based.

"This applies, for example, where successive actions are brought for breaches of the same contract. Thus, if in an action for breach of contract an issue is raised and determined as to the legal sufficiency or the construction of the contract, the judgment is conclusive between the parties in a subsequent action brought to recover for another breach of the same contract in which the same issue arises.

"The rule here stated is applicable where successive actions are brought to recover installments of interest upon an obligation, or rentals under a lease, *or income or property taxes for succeeding years.*" [Emphasis supplied.] [30]

Baker & Ford also rely upon the statement of Professor Scott in volume 56 of

30. Restatement, Judgments § 70 (1942).

31. 56 Harv.L.Rev. 1, 7–10 (1942). Professor Scott was appointed a reporter for the American Law Institute in the prep-

the Harvard Law Review that "the doctrine of collateral estoppel is applicable not merely to questions of fact but also to questions of law," although "it seems clear that it is not applied to questions of law unless the successive actions not only involve the same questions of law but also arise out of the same transaction or involve the same subject matter." Additionally, if in the interim between two actions the highest court of the state rejects the rule of law applied in the first action, the erroneous rule of law is not binding on the parties in the second action, for "it would be manifestly unjust to apply one rule of law forever as between the parties and to apply a different rule as to all other persons." [31]

The chief bone of contention between the parties on the question we are now considering seems to be whether collateral estoppel prevents the parties from relitigating an issue of law only when that issue arises out of the very same facts as were involved in the prior suit. The controversy grows out of the following statement contained in Commissioner v. Sunnen:

"[I]f the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. *But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case.* Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. *In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue.* * * * [Emphasis added.]" [32]

aration of the volume on Judgments of the Restatement of the Law.

32. Commissioner v. Sunnen, 333 U.S. 591, 601, 68 S.Ct. 715, 721, 92 L.Ed. 898, 908 (1948).

The state contends that, although the relevant facts concerning the activities of Baker & Ford during the tax years 1953–1958 and 1959 may be "similar" or even "identical," nevertheless they are separable. It says: "Not only are the tax periods different, the activities of the appellee [Baker & Ford] during these years were different. Appellee entered into several contracts during the years 1953 to 1960, involving many different projects. The gross revenues received by appellee, in the course of its activities in federal projects, varied in amounts from year to year."

The state admits that the distinction between the "same facts" and "similar or identical facts" may be a narrow one but claims that it has practical merit, for "the doctrine of res judicata is so rigid in its operation, that indiscriminate application of the doctrine would be intolerable." But the state does not elucidate in what respect application of the doctrine would be intolerable in its case. In fact, we doubt that the state would now want to urge this or any other point it has raised on this appeal because of the turn in events occasioned by the action of the Supreme Court of Washington in declaring the revenue provisions of the ABLA constitutional.

■ Be that as it may, we hold to the view expressed by Baker & Ford in their brief that the issue is whether, in the language of the Restatement, supra, the present litigation involves the same transaction or subject matter as was involved in the Washington action. We conclude that it does. The sole issue in each case is the constitutional right of the state under the ABLA to tax the business activities of Baker & Ford in Alaska, which involved the same transaction or subject matter for all of the tax periods—construction work performed under contract with the federal government exclusively on United States military reservations. This satisfies the requirements of the rule in Sunnen: "[I]f the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change." [33] Accordingly we find that collateral estoppel is applicable in this litigation even though only a question of law is involved, and again we assume that the Washington court would do likewise if called upon to rule on the question.[34]

As a final argument the state asserts that "even if it were determined that the present case arose out of the 'same subject matter or transaction', within the meaning of RESTATEMENT OF JUDGMENTS § 70, collateral estoppel would not be applied if injustice would result." [35] The injustice en-

33. Id.

34. The Washington Supreme Court did state in Rufener v. Scott (1955), 46 Wash.2d 240, 280 P.2d 253 at 256 that "A right, a question or a fact, put in issue and determined by a court of competent jurisdiction as a ground of recovery, cannot again be disputed in a subsequent suit between the same parties or their privies." The statement is almost identical with that made by the United States Supreme Court in Southern Pac. R.R. v. United States, 168 U.S. 1, 48–49, 18 S. Ct. 18, 27, 42 L.Ed. 355, 377 (1897), except that the latter court went on to say that "even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." That portion of the Washington court's statement which speaks of "a right" or "a question" was obiter dicta, however, because the issue before the court at the time was whether a certain *factual* question had been submitted to the jury in a prior case. See also Riblet v. Ideal Cement Co., 54 Wash.2d 779, 345 P.2d 173, 175–176 (1959).

35. The state quotes specifically from comment f of section 70 of the Restatement, Judgments at page 324 as follows: "The determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction, if it would be unjust to one of the parties or to third persons to apply one

visaged by the state, in its own words, is "an insurmountable competitive advantage" and "a vast, unique tax windfall at the expense of the public revenues" for the taxpayer who wins in the prior action and is thereby "allowed infinite immunity on the basis of a wrong interpretation of the law." In support of its position the state relies upon several federal and state decisions which hold that the rule of collateral estoppel will not be applied where discrimination among taxpayers would result.[36]

The foregoing argument and the fears expressed by the state have no doubt been stilled by the fact that the Supreme Court of the State of Washington has reversed Judge Hardin of the superior court and ruled that the strictly revenue provisions of the ABLA are constitutional. But, even if Judge Hardin's decision had not gone up on appeal and been declared to be erroneous, we would have recognized it as controlling in the instant case until the Washington Supreme Court or an appropriate Alaska court might have placed a different construction upon the pertinent provisions of the ABLA.[37]

In conclusion we find no error in the Washington Supreme Court's holding that

the $25 license fee and the additional tax on gross income imposed upon Baker & Ford are valid revenue measures under the ABLA. We also agree that the provisions for the addition of penalty and interest for failure to pay the tax are designed to persuade the taxpayer to comply with the act. But whether the Washington court was correct in holding that the imposition of such penalty and interest were unconstitutional revenue measures instead of being merely another phase of the ABLA we need not decide at this time, for in either ·event suit to collect such penalty and interest was outlawed in the Washington action by the statute of limitations of Washington [38] and Alaska,[39] which both provide a two-year limitation with respect to statutory penalties.

The order of the trial court granting summary judgment to Baker & Ford as plaintiffs below in their action for refund of the taxes and interest thereon collected ·from them by the state for the years 1953–1959 is set aside and the case remanded with directions to the superior court to proceed in conformity with this opinion.

So ordered.

---

rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons."

36. United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927); Engineers' Club of Philadelphia v. United States, 95 Ct.Cl. 42, 42 F.Supp. 182, cert. denied 316 U.S. 700, 62 S.Ct. 1294, 86 L.Ed. 1769 (1942); State v. American Sugar Ref. Co., 108 La. 603, 32 So. 965 (1902); In re Breuer's Income Tax, 354 Mo. 578, 190 S.W.2d 248 (1945).

37. See Commissioner v. Sunnen, supra note 32, 333 U.S. at 601, 68 S.Ct. at 721, 92 L.Ed. at 908 where the Supreme Court said: "And if the very same facts and no others are involved in the second case, a case relating to a different tax year, *the prior judgment will be conclusive as to the same legal issues which*

*appear, assuming no intervening doctrinal change."* [Emphasis supplied.] To the same effect is the following statement contained in revised comment f as it appears in the 1948 supplement to Restatement, Judgments: "Likewise in an action with respect to federal income or excise taxes a judgment based upon one construction of the Federal Revenue Act, although conclusive as to the liability for the tax involved in the action, is not conclusive as to the taxpayer's liability for subsequently accruing tax when it appears that in the interim the appropriate appellate court has placed another construction upon the pertinent provisions of the Revenue Act."

38. RCW 4.16.100(2).

39. Section 55–2–7 A.C.L.A.1949 (now AS 09.10.070).