**HUMBLE OIL & REFINING COMPANY, Appellant,**

v.

**Robert S. CALVERT, Comptroller of Public Accounts et al., Appellees.**

No. 11791.

Court of Civil Appeals of Texas, Austin.

Feb. 10, 1971.

Rehearings Denied March 10, 1971.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Lloyd Lochridge, Austin, Neville Fitch, Walter B. Morgan, Houston, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., John R. Grace, J. H. Broadhurst, Wardlow Lane, Asst. Attys. Gen., Austin, for appellees.

PHILLIPS, Chief Justice.

Plaintiff below, Appellant here, Humble Oil & Refining Company, paid the State of Texas, under protest, certain sums asserted by the State to be due it under Vernon's Ann.Tex.Rev.Civ.Stat. art. 6032, Chapters 3 and 4, Title 122A, V.A.T.S., as a result of production by Humble of oil and gas from the Corpus Christi Naval Air Station lease. Humble brought this suit in accordance with Tex. Tax.-Gen. Ann. art. 1.05, Title 122A and art. 7057b, to recover such sums with interest earned thereon as provided by law.

At the time of the execution by the United States of the oil and gas lease to Humble in 1962, the Corpus Christi Naval Air Station was owned in fee by the United States and the area included within such station was a federal enclave with exclusive jurisdiction in the United States

except for the right reserved by the State of Texas to serve process.

The trial court, sitting without a jury, entered judgment that Appellant take nothing by its suit.

The judgment of the trial court is reformed and as reformed, affirmed.

### I.

Appellant is before us with eleven points of error;[1] however, inasmuch as we sustain its first, it will not, be necessary to discuss the remaining points. Appellant's first point, which we sustain, is the error of the trial court in holding that the production of oil and gas from the premises covered by the oil and gas lease, an area of exclusive federal jurisdiction, was subject to the taxes provided for by Chapters 3 and 4 of Title 122A, Taxation-General, and Tex.Rev.Civ.Stat.Ann. art. 6032, erring separately as to each such tax and collectively as to all such taxes.

The Corpus Christi Naval Air Station was acquired for the purpose of construction and operation of a naval air training station and it has been devoted to such use at all times since its acquisition. The State of Texas ceded exclusive jurisdiction to the United States by deed of cession dated December 12, 1940 and was accepted by the United States February 3, 1941. The deed of cession reserved concurrent jurisdiction only to the extent that all process, civil or criminal, issuing under the authority of the State of Texas or any of the courts or judicial officers thereof, might be executed by the proper officers of the State.

We hold that this point is controlled by the decision of the United States Supreme Court in Humble Pipe Line Co. v. Waggoner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed. 2d 782 and by the decision of the U. S. Court of Appeals, 5th Circuit, Mississippi River Fuel Corporation v. Cocreham, 382 F.2d 929 (1967), cert. denied Monton v. Mississippi River Fuel Corp., 390 U.S. 1014, 88 S.Ct. 1264, 20 L.Ed.2d 164. The question before the court in Waggoner was whether the United States has such exclusive jurisdiction, over a large tract of

1. "SECOND POINT: The trial court erred in holding that the State of Texas had jurisdiction to levy and collect the taxes involved in this cause; THIRD POINT: The trial court erred in holding that the oil and gas lease coupled with language in the deed of cession caused jurisdiction to revest in the State of Texas to levy and collect the taxes involved in this suit; FOURTH POINT: The trial court erred, regardless of the nature of the rights, estate, interest or privileges vested in Plaintiff (Appellant) by virtue of the oil and gas lease, in holding there was jurisdiction in the State of Texas, from termination of federal jurisdiction, reservation of jurisdiction, or otherwise, to levy and collect the taxes involved in this suit; FIFTH POINT: The trial court erred in holding that the oil and gas lease was a conveyance in fee of the minerals in place to Plaintiff (Appellant); SIXTH POINT: The trial court erred in failing to hold that the question of federal jurisdiction is a federal question governed by independent rule of decision, or federal common law, and not by the law of the State of Texas; SEVENTH POINT: The trial court erred in failing to apply an independent rule of decision, or federal common law, which in this case would have been the rule of HUMBLE PIPE LINE v. WAGGONER and MIS-SISSIPPI RIVER FUEL CORP. v. COCREHAM; EIGHTH POINT: The trial court erred in holding that there was jurisdiction in the State of Texas to levy and collect the occupation taxes involved in this suit; NINTH POINT: The trial court erred in enforcing State of Texas legislative jurisdiction in an area of exclusive federal jurisdiction, thereby conflicting with and failing to give effect to Article 1, Section 8, Clause 17, of The Constitution of The United States; TENTH POINT: The trial court, having correctly held that the taxes involved were not within Sections 106 and 110 of Title 4, United States Code Annotated (The Buck Act), erred in entering judgment that plaintiff (Appellant) take nothing by its suit and ELEVENTH POINT: The trial court erred in failing to render judgment for Plaintiff (Appellant) in the sum of $92,788.42, the sum of such taxes paid under protest, together with interest earned thereon."

land in Louisiana on which the Barksdale Air Force Base is located that Louisiana was without jurisdiction to levy an ad valorem tax on privately owned property situated on the tract. The court denied the state the right to tax the property in the federal enclave "for here the Government continues to hold all the land subject to its primary jurisdiction and control." In *Mississippi River Fuel* the court held that the State of Louisiana could not extract severance taxes on oil and gas produced by the lessee, a private corporation, under mineral lease from the United States on land that was part of Barksdale Air Force Base which had been acquired by the United States from the State of Louisiana. Here the court restated the principle announced in *Waggoner*, that the state lacks authority to levy *any* tax in an area under the exclusive jurisdiction of the United States.

The State's position in this case is that the execution of the oil and gas lease by the United States Government was a conveyance in fee of the mineral estate in place and constituted an abandonment of exclusive political jurisdiction by the U. S. Government as to the minerals included in the oil and gas lease; that the production of oil and gas produced by Humble was subject to the occupation tax levied by Chapters 3 and 4 of Title 122A, Taxation-General, regardless of whether the question of jurisdiction is controlled by Federal or State law.

In support of this position, the State has cited S.R.A. Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851, (1945), where the State of Minnesota was allowed to tax realty within the boundaries of that State while the legal title remained in the United States. *S.R.A.* involves a fact situation different from that before us. There the Federal Government had conveyed away the entire fee to the territory over which it previously had

exclusive jurisdiction, although retaining legal title as security for payment of the purchase price. In the case at bar, the Federal Government continues to own the fee in the Corpus Christi Naval Air Station, subject only to the lease, and continues to use it for the constitutional purpose. Consequently, its exclusive jurisdiction continues over the territory. The United States Supreme Court recognized this distinction in *Waggoner*. The Court also stated in *Waggoner* that it is by no means sure that a federal agency making an oil and gas lease could waive the Government's exclusive jurisdiction over a federal reservation. Here the Court was making reference to the division of powers between the branches of the United States Government and to the principle that since exclusive jurisdiction is legislative, only Congress has the power to relinquish such exclusive jurisdiction. This same distinction applies to the *Baltimore Shipbuilding*[2] case cited by appellee.

Nor is *Group No. 1 Oil Corporation*,[3] urged by the State, controlling here. The United States Supreme Court held in that case that the owner of an oil and gas lease on land owned by the State of Texas, and the owner's income from such lease, were not immune from federal taxation. Perhaps this case can be distinguished on the theory of immunity from taxation, or lack thereof, as opposed to the jurisdiction of the federal government over an active enclave, perhaps not. In any event, this decision of 1930 in no way alters the mandate of the Federal Courts in *Waggoner*, or *Cocreham*. In the latter the Court states:

"While there are differences between the taxes involved, we think that *Humble* did not rest on the peculiar attributes of the ad valorem tax. It rested instead on the general principle that a state lacks authority to levy any tax in

2. Baltimore Shipbuilding & Dry Dock Company v. City of Baltimore, 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242 (1904).

3. Group No. 1 Oil Corporation v. Bass, 283 U.S. 279, 51 S.Ct. 432, 75 L.Ed. 1032 (1930).

an area under the exclusive jurisdiction of the United States."

In the former:

"When Congress has wished to allow a state to exercise jurisdiction to levy certain taxes within a federal enclave it has specifically so stated, as in the Buck Act, 4 U.S.C. §§ 104–110."

Also see Adams v. Calvert, 396 S.W.2d 948 (Tex.1965).

## II.

The deed of cession also contains the following provision:

"This deed of Cession is made pursuant to Articles 5242, 5247 and 5248 of the Revised Civil Statutes of Texas, 1925, and in accordance therewith the United States of America shall be secure in its possession and enjoyment of all said lands, and said lands and all improvements thereon shall be exempt from any taxation under the authority of the state of Texas, so long as the same are held, owned, used, and occupied by the United States of America for any of the purposes expressed in the foregoing statutes and not otherwise."

The State contends that the above-mentioned statutes enumerated in the deed constitute a reservation that the United States shall be secure in its possession and enjoyment of all said lands and shall be exempt from any taxation from the State so long as they are "held, owned, used, and occupied by the United States of America for any of the purposes expressed in the foregoing statutes and not otherwise." That when the United States sold and conveyed the mineral lease involved in this land to Humble that the mineral estate was no longer being "held, owned, used, etc." That, consequently, the sale of the minerals was a relinquishment and abandonment by the United States of exclusive political jurisdiction formerly exercised over this property.

We do not agree. Article 5242 gives legislative permission to the United States to acquire "lands" within Texas for specified purposes including the constitutional purposes of Article 1, Section 8, clause 17. Article 5247 authorizes the cession of exclusive jurisdiction save for the service of process. The third reference is to Article 5248 as it existed at the date of cession which is, with the exception of the reference to the three statutes, incorporated, almost word for word, in the deed of cession as set out above.

There is nothing in the reference to Articles 5242 and 5247 which in any way limit the grant of jurisdiction for they authorize the cession in terms limited only with relation to service of process. Nor does Article 5248, as it existed at the time (before the "provisos" added in 1950) reserve taxing power.

■ Federal law permits a state to reserve in its deed of cession all jurisdiction consistent with the constitutional federal use, but no more. However, the reservation by the state, whether by statute or reservation, must be clear. See Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1929), where the Court said:

"The words are ill-adapted to expressing such a purpose—so much so that, had it existed, there can be little doubt that it would have been stated differently."

■ This statement was quoted with approval by the Texas Supreme Court in Adams v. Calvert, above. We hold that the statutes incorporated in the deed of cession did not reserve to the State the power claimed.

## III.

■ The State is also before us with four cross-points of error which we shall discuss together. They are error of the trial court in holding that the gross pro-

duction taxes levied in Tex.Rev.Civ.Stat. Ann. art. 4.01, Title 122A, Taxation-General, are not "income taxes" within the meaning of that term in the Buck Act, 4 U.S.C.A. Secs. 105–110; in holding that the gross production tax levied in Tex. Rev.Civ.Stat.Ann. art. 4.01, Title 122A, Taxation-General, are not taxes related to or measured by the gross receipts, or gross income of the production operations considered separately from other activities of the producer; in holding that the gross production taxes levied in Tex.Rev.Civ. Stat.Ann. art. 3.01, Title 122A, Taxation-General, are not "income taxes" within the meaning of that term in the Buck Act, 4 U.S.C.A. Secs. 105–110; in holding that the gross production tax levied in Tex. Rev.Civ.Stat.Ann. art. 3.01, Title 122A, Taxation-General, are not taxes related to or measured by the gross receipts, or gross income of the production operations considered separately from other activities of the producer.

We sustain these points.

The Texas oil severance tax, Tex.Rev. Civ.Stat.Ann. art. 4.02, Title 122A, provides for a tax of 4.6 cents per barrel of oil produced with the further proviso that whenever a barrel of oil has a market value in excess of $1.00, the tax shall be 4.6 percent of the market value of the oil.

The Texas gas severance tax, Tex.Rev. Civ.Stat.Ann. art. 3.01, Title 122A, Taxation-General, provides for a tax equal to 7½ percent of the market value of the gas produced and saved, provided, however, that the amount of the tax on sweet and sour gas shall never be less than $121/_{1500}$ of one cent (1¢) per one thousand (1,000) cubic feet. When gas has a market value of less than 1.076 per Mcf. the tax will be $121/_{1500}$ of one cent per Mcf. If the gas has a market value in excess of 1.076 cents per Mcf., the tax will be $121/_{1500}$ of one cent plus 7½ percent of an additional sum. Under some operating and marketing conditions, the additional sum will be the excess of market value of the

gas over 1.076 cents per Mcf. Under other operating and marketing conditions, the additional sum will be the excess of a statutory fictional taxable value computed under various arbitrary formulae. Consequently, when the gas has a market value of less than the minimum, the tax is measured only by units of volume.

The Buck Act defines "income tax" as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U.S.C.A. Sec. 110(c).

Appellant maintains that inasmuch as in both the tax on oil and gas that the tax is measured by units of volume, that the tax is not a Buck Act tax and cite *Mississippi River Fuel* as authority for this contention.

We do not agree. Every tax on the "value" of any commodity must of necessity be measured by some type of unit whether it be barrels, cubic feet or dollars. We agree with the State's contention that the taxes here are measured on the value of the oil and gas in each instance, whatever the formula and that the purpose of the tax is to secure revenue for the State. By calling the tax an occupation tax or a severance tax, or whatever else, begs the question. The purpose of the tax is to bring "income" to the State for revenue purposes.

■ This line of reasoning was followed by the Supreme Court of the State of Washington in Alaska v. Baker, 390 P.2d 1009, 64 Wash.2d 207 (1964). The appeal was dismissed by the United States Supreme Court in 380 U.S. 260, 85 S.Ct. 952, 13 L.Ed.2d 959. The facts there, somewhat similar to those at bar, are not too important here. The importance of this decision is the manner in which the Court, for the purpose of the Buck Act, divided taxes into those intended to bring in revenue, and those enacted under the police power of the State such as licensing fees. Thus, irrespective of what the tax is called, if its purpose is to produce reve-

**176**

nue, it is an income or a receipts tax under the Buck Act. The tax at bar is a revenue measure thus it falls within the Act.

The State has not assigned error to the Trial Court's determination that the Regulation Pipeline Tax, Article 6032, is not within the scope of the Buck Act, consequently we reform the Trial Court's judgment to allow appellant to recover the sum of the Regulation Pipeline Tax payments in issue together with interest earned thereon. In all other things the judgment of the Trial Court is affirmed.